JOSEPH G. SANSONE
Simona K. Suh
Joshua Geller
Ann Marie Preissler
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-5056 (Preissler)
Email:  preisslera@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>         -against-<br><br>AMIT BHARDWAJ, DHIRENKUMAR PATEL, SRINIVASA KAKKERA, ABBAS SAEEDI, and RAMESH CHITOR,<br><br>                    Defendants,<br><br>         -and-<br><br>GAURI SALWAN, THE KAKKERA FAMILY TRUST, ALL US TACOS INC., and JANYA SAEEDI,<br><br>                    Relief Defendants. | **COMPLAINT**<br><br>1:22-cv-06277_(    )<br><br>**JURY TRIAL DEMANDED** |

Plaintiff United States Securities and Exchange Commission ("Commission"), for its Complaint against Defendants Amit Bhardwaj ("Bhardwaj"), Dhirenkumar Patel ("Patel"), Srinivasa Kakkera ("Kakkera"), Abbas Saeedi ("Saeedi"), and Ramesh Chitor ("Chitor"), (collectively, "Defendants"), and Relief Defendants Gauri Salwan ("Salwan"), the Kakkera

1

Family Trust ("the Kakkera Trust"), All US Tacos Inc. ("All US Tacos"), and Janya Saeedi (collectively, "Relief Defendants") alleges as follows:

## SUMMARY

1. This action involves insider trading by the Defendants in the securities of Coherent, Inc. ("Coherent") and NeoPhotonics Corporation ("NeoPhotonics") based on material nonpublic information misappropriated by Bhardwaj, then Chief Information Security Officer ("CISO") to Lumentum Holdings Inc. ("Lumentum"), ahead of, first, the January 19, 2021 announcement of Lumentum's agreement to acquire Coherent (the "Coherent Announcement"), and, second, the November 4, 2021 announcement of Lumentum's agreement to acquire NeoPhotonics (the "NeoPhotonics Announcement").

2. Bhardwaj learned material nonpublic information about Lumentum's plan to acquire Coherent in late 2020, through his work at Lumentum.

3. Based on that material nonpublic information and in breach of his duty of trust and confidence to Lumentum, during the weeks leading up to the Coherent Announcement, Bhardwaj purchased Coherent securities for himself and caused a brokerage account held in the name of his wife, Salwan, to purchase more Coherent securities. Bhardwaj also tipped his friend Patel to purchase Coherent securities ahead of the Coherent Announcement and provided Patel with funds for some of those purchases, in exchange for a promise that Patel would share some of his ill-gotten gains with Bhardwaj.

4. Following the Coherent Announcement, the company's stock price went up by approximately 29%, and Bhardwaj, Salwan, and Patel obtained ill-gotten gains of at least $448,000, $14,000, and $423,000, respectively. As they had agreed before the Coherent

Announcement, Patel subsequently sent a portion of his ill-gotten trading gains to Bhardwaj. At Bhardwaj's direction, Patel made the payment to Bhardwaj's friend Kakkera.

5. Approximately ten months later, Bhardwaj again misappropriated Lumentum's material nonpublic information, this time about Lumentum's impending acquisition of NeoPhotonics. Bhardwaj again learned this information through his work and, in breach of his duty of trust and confidence to Lumentum, tipped his friends Kakkera, Saeedi, and Chitor to trade in NeoPhotonics securities ahead of the NeoPhotonics Announcement.

6. During approximately three weeks leading up to the NeoPhotonics Announcement, based on Bhardwaj's tips, Kakkera purchased NeoPhotonics securities in multiple accounts held in his own name and also caused an account of the Kakkera Trust to purchase NeoPhotonics securities; Saeedi purchased NeoPhotonics securities in an account held in his own name and also caused accounts in the names of his entity All US Tacos and his wife Janya Saeedi to purchase NeoPhotonics securities; and Chitor purchased NeoPhotonics securities in an account held in his own name.

7. Following the NeoPhotonics Announcement, the company's stock price went up by more than 38%, and Kakkera, the Kakkera Trust, Saeedi, All US Tacos, Janya Saeedi, and Chitor obtained ill-gotten gains of at least $2.16 million, $289,000, $176,000, $127,000, $387,000, and $1.24 million, respectively. Some of those profits were later shared with Bhardwaj.

8. From the Defendants' illicit trading, the Defendants and the Relief Defendants reaped combined illegal profits totaling more than $5.2 million.

## VIOLATIONS

9. By virtue of the foregoing conduct and as alleged further herein, Defendants have violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

10. Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

11. The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Sections 21(d) [15 U.S.C. § 78u(d)] and 21A(a) [15 U.S.C. § 78u-1(a)].

12. The SEC seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws and rules this Complaint alleges they have violated; (b) ordering Defendants and Relief Defendants to disgorge any ill-gotten gains they received as a result of the violations alleged here and to pay prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendants to pay civil money penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; (d) prohibiting Defendants from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this action pursuant to Exchange Act Section 27 [15 U.S.C. § 78aa].

14. Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

15. Venue lies in this District under Exchange Act Section 27(a) [15 U.S.C. § 78aa(a)]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including executions of securities transactions through at least one broker-dealer located in this District and clearing and settlement through a financial services company located in this District, and involve securities listed on stock exchanges located within this District.

**DEFENDANTS**

16. **Bhardwaj**, age 49, resides in San Ramon, California. From at least 2019 until July 15, 2022, Bhardwaj was employed, through a wholly-owned indirect subsidiary of Lumentum, as the CISO of Lumentum.

17. **Patel**, age 50, resides in Newark, California. Since 2016, Patel has been employed as a manager of technical marketing at a software company based in Santa Clara, California.

18. **Kakkera**, age 47, resides in Pleasanton, California. Since 2019, Kakkera has worked as the Head of Engineering and Artificial Intelligence at a publicly-traded computer software company headquartered in San Jose, California.

19.     **Saeedi**, age 47, resides in Fremont, California.  Saeedi is the Chief Executive Officer and the owner/operator of a tax preparation firm in Newark, California.

20.     **Chitor**, age 45, resides in Fremont, California.  Chitor works as Director of Alliances at a publicly-traded data security firm based in Palo Alto, California.

## RELIEF DEFENDANTS

21.     **All US Tacos** is a California corporation with its principal place of business in Fremont, California.  Saeedi and Janya Saeedi are the sole directors.  Saeedi had authority to and did execute trades for the brokerage account of All US Tacos.

22.     **The Kakkera Trust** is a personal and testamentary trust governed by the state of California.  Kakkera and his wife are the trustees.  At all relevant times, Kakkera had authority to and did execute trades for the brokerage account of the Kakkera Trust.

23.     **Salwan**, age 45, is the wife of Bhardwaj and resides in San Ramon, California.

24.     **Janya Saeedi**, age 54, is the wife of Saeedi and resides in Fremont, California.  Although during relevant time Saeedi did not have formal authority to trade in his wife's brokerage account, his contact information was listed on the account, and he directed the trading in the account.

## OTHER RELEVANT ENTITIES

25.     **Lumentum** is a provider of optical and photonic products incorporated in Delaware and headquartered in San Jose, California.  Lumentum's common stock is listed on the NASDAQ Global Select Market, trading under the symbol "LITE."

26.     **Coherent** is a provider of laser solutions and optics headquartered in Santa Clara, California.  At the time of the events alleged in this Complaint, Coherent's common stock was

listed on the NASDAQ Global Select Market and the NASDAQ Stock Market LLC, and traded under the symbol "COHR."

27.     **NeoPhotonics** is a developer of silicon photonics and advanced hybrid photonic integrated circuit-based lasers, modules and subsystems for communications networks, headquartered San Jose, California.  NeoPhotonics's common stock is listed on the New York Stock Exchange and trades under the symbol "NPTN."

## FACTS

### I.    Bhardwaj's Role at Lumentum

28.     From at least June 2019 to July 2022, Bhardwaj served as the CISO at Lumentum.

29.     Bhardwaj's job responsibilities included, among other things, defining and developing a strategy and execution of Lumentum's information security and programs, providing thought leadership to executive teams and Lumentum's board of directors around information security and risk management, ensuring proper information technology audit and compliance controls, and reviewing and approving information security policies, controls, privacy policies, standards and procedures.  At all relevant times, as CISO, Bhardwaj had access to Lumentum's information technology systems.

30.     At all relevant times, Bhardwaj was bound by Lumentum's policies and procedures, including policies relating to insider trading and safeguarding material nonpublic information.  Those policies specifically applied to officers, employees, and consultants to Lumentum and its subsidiaries.  Under those policies, Bhardwaj owed a duty to Lumentum not to trade upon such information or advise anyone else to do so; was required to maintain the confidentiality of Lumentum's material nonpublic information; and was prohibited from disclosing to persons outside of Lumentum material nonpublic information without a corporate

purpose. The material nonpublic information that Bhardwaj was charged with safeguarding specifically included news of "potential mergers or acquisitions."

## II.     Insider Trading In Coherent Securities

### A.     The Coherent Deal

31.     Lumentum and Coherent initially discussed a potential transaction in the fall of 2019. Their discussions ceased in March 2020 and resumed in November 2020, when Lumentum submitted an indication of interest to acquire Coherent.

32.     Throughout November and December 2020, Lumentum submitted several acquisition offers to Coherent and signed an exclusivity agreement with Coherent on or around December 27, 2020.

33.     Throughout the next three weeks, Lumentum and Coherent conducted due diligence and negotiated the terms of the proposed transaction.

34.     During this same period from November 2020 to mid-January 2021, Lumentum also explored the potential acquisition of NeoPhotonics.

35.     On the evening of January 18, 2021, Lumentum and Coherent signed a definitive merger agreement under which Lumentum was to acquire Coherent in a cash and stock transaction valued at $5.7 billion. Following the pre-market-open Coherent Announcement on the next day, the price of Coherent stock closed at $197.01 per share, an increase of approximately 29.65% from its closing price on the previous day.

36.     In March 2021, Coherent terminated its acquisition agreement with Lumentum, and it ultimately entered into an agreement to be acquired by another company.

### B.  Bhardwaj and Salwan Accounts Purchased Coherent Securities

37. In the course of his employment as CISO of Lumentum, Bhardwaj learned by at least December 2020 that Lumentum was considering acquisition of Coherent and NeoPhotonics. This information was material and nonpublic.

38. Between December 2020 and the January 19, 2021 Coherent Announcement, Bhardwaj continued to have, through his work at Lumentum, access to material nonpublic information about Lumentum's acquisition intentions.

39. Bhardwaj caused, directly or indirectly, Salwan's brokerage account to purchase shares of Coherent stock on December 30, 2020 and January 14, 2021. By the time of the Coherent Announcement, Salwan's account had accumulated 353 shares of Coherent stock.

40. Bhardwaj purchased Coherent stock and call options in his own brokerage accounts between December 30, 2020 and January 15, 2021. Using his brokerage accounts, by the date of the Coherent Announcement, Bhardwaj accumulated 4,316 Coherent shares and 72 Coherent call options.

41. Between November 30 and December 29, 2020, while Lumentum was also considering acquiring NeoPhotonics, Bhardwaj also purchased NeoPhotonics shares and call options in his brokerage accounts. Bhardwaj liquidated his NeoPhotonics holdings by January 13, 2021, when it became clear that Lumentum was more likely to acquire Coherent, rather than NeoPhotonics.

42. Following the Coherent Announcement, Bhardwaj and Salwan obtained total ill-gotten gains of approximately $462,000.

43. Bhardwaj purchased Coherent securities for his own accounts and caused purchases in Salwan's account, as alleged above, while in possession and on the basis of material

nonpublic information about Lumentum's acquisition plans, in violation of Lumentum's policies, and in breach of his duty of trust and confidence to Lumentum.

44. Bhardwaj knew or recklessly disregarded that the information he possessed about Lumentum's acquisition plans was material and nonpublic.

45. Bhardwaj knew or recklessly disregarded that, by trading on Lumentum's confidential information in his own and Salwan's accounts, as alleged above, he was breaching his duty to Lumentum.

C. **Bhardwaj Tipped Patel About the Coherent Announcement, and Patel Traded on the Tip and Shared Illicit Profits With Bhardwaj**

46. At all relevant times between November 2020 and January 2021, Bhardwaj and Patel were longtime friends. Bhardwaj and Patel socialized in person and communicated via WhatsApp, telephone calls, and text message about topics including investing in securities and business opportunities.

47. In or around November or December 2020, Bhardwaj told Patel that Lumentum was looking to acquire other companies and proposed that Bhardwaj and Patel profit by trading securities on the basis of confidential Lumentum information about such potential acquisitions.

48. By December 31, 2020, Bhardwaj told Patel that Lumentum was going to acquire a company, and that Coherent and NeoPhotonics were among the targets. This information was material and nonpublic.

49. Bhardwaj and Patel agreed that Patel would trade on the material nonpublic information provided by Bhardwaj, and that Patel would share with Bhardwaj some of his profits from the trading.

50. While in possession and on the basis of material nonpublic information provided by Bhardwaj, Patel began purchasing Coherent call options on December 31, 2020.

51. In or around the first week of January 2021, Bhardwaj gave Patel approximately $40,000 in cash, to fund further investments in Lumentum's acquisition targets.

52. Later in January 2021, Bhardwaj told Patel that he was more confident that Lumentum would acquire Coherent.

53. Patel made additional purchases of Coherent securities between January 5 and 15, 2021. As of January 15, 2021, Patel had accumulated long positions of 8,000 shares of Coherent stock and 70 Coherent call option contracts.

54. On January 19, 2021, following the Coherent Announcement, Patel sold all of his holdings of Coherent stock and call options, generating illegal profits of over $423,000.

55. In addition, in January 2021, while Lumentum was also considering acquiring NeoPhotonics, Patel purchased 20,000 shares of NeoPhotonics stock.

56. In April 2021, on Bhardwaj's instruction and pursuant to Patel's agreement to share insider trading profits with Bhardwaj, Patel wrote a check for $100,000 to Bhardwaj's friend Kakkera.

57. The information that Bhardwaj tipped to Patel about Lumentum's plans to acquire Coherent and/or NeoPhotonics was material and nonpublic.

58. Bhardwaj knew or recklessly disregarded that the information he tipped to Patel was material and nonpublic.

59. Bhardwaj tipped Patel with this information in violation of Lumentum's policies and in breach of Bhardwaj's duty of trust and confidence to Lumentum.

60. Bhardwaj tipped Patel for personal benefits, including personal financial gain and the benefit of making a gift of material nonpublic information to a friend.

61. Bhardwaj intended for Patel trade on the tip, and he knew or recklessly disregarded that Patel would use the tip to trade in Coherent securities.

62. At the time of his trading in Coherent securities, Patel knew that Bhardwaj worked as the CISO for Lumentum and had access to confidential information about the company's potential business transactions.

63. Patel purchased Coherent securities as alleged above while in possession and on the basis of the material nonpublic information that he had received from Bhardwaj. Patel knew or recklessly disregarded that the information was material and nonpublic.

64. Patel knew, recklessly disregarded, or consciously avoided knowing that the tips he received from Bhardwaj were conveyed in breach of Bhardwaj's fiduciary duty or a similar obligation arising from a relationship of trust and confidence.

65. In addition to Patel, by at least early January 2021, Bhardwaj also tipped material nonpublic information to two other individuals who also purchased Coherent stock in advance of the Coherent Announcement and obtained illicit profits of more than $10,000. Bhardwaj knew or recklessly disregarded that the information he tipped to these individuals was material and nonpublic.

66. Bhardwaj tipped this information to the two individuals with the intent to benefit those individuals, in violation of Lumentum's policies, and in breach of Bhardwaj's duty of trust and confidence to Lumentum.

67. Bhardwaj tipped the two individuals for personal benefits, including the benefit of making a gift of material nonpublic information to a friend or a relative.

68. Bhardwaj intended for the two individuals to trade on his tips, and he knew or recklessly disregarded that the two individuals would use the tips to trade in Coherent securities.

**III.     Insider Trading in NeoPhotonics Securities**

    **A.     The NeoPhotonics Deal**

69.     Lumentum and NeoPhotonics first discussed a potential acquisition in September 2020, and their initial discussions ceased in January 2021, when Lumentum announced the agreement to acquire Coherent.  In March 2021, Lumentum contacted NeoPhotonics to determine whether NeoPhotonics would be interested in reengaging in potential acquisition discussions with Lumentum.

70.     Between June and September 2021, Lumentum and NeoPhotonics exchanged several offers and counteroffers, culminating in a September 30, 2021 offer by Lumentum to acquire NeoPhotonics for $16.00 per share.  NeoPhotonics's board approved this proposal on October 5, 2021.

71.     From October 10, 2021 to November 3, 2021, Lumentum and NeoPhotonics negotiated the terms of the acquisition agreement and engaged in various due diligence discussions.

72.     By at least mid-October 2021, through his work as CISO of Lumentum, Bhardwaj became aware that Lumentum was likely to acquire NeoPhotonics.  On or about October 20, 2021, Lumentum tasked Bhardwaj with evaluating certain aspects of NeoPhotonics's data security systems.  The information that Bhardwaj obtained about Lumentum's plan to acquire NeoPhotonics was material and nonpublic.

73.     Before the market opened on November 4, 2021, Lumentum publicly announced its agreement to acquire NeoPhotonics.  Later that day, the price of NeoPhotonics stock closed at $15.99 per share, an increase of approximately 38.8% from its closing price on the previous day.

**B.      Bhardwaj Tipped Kakkera About the NeoPhotonics Announcement, and Kakkera Traded on the Tip**

74.     Kakkera was a longtime friend of Bhardwaj.  During 2021, Kakkera frequently communicated with Bhardwaj by telephone calls and through text and WhatsApp messages.

75.     Bhardwaj and Kakkera communicated by telephone on October 8 and October 9, 2021.

76.     By at least October 13, 2021, Bhardwaj tipped Kakkera with material nonpublic information about Lumentum's plan to acquire NeoPhotonics.

77.     From October 13 through November 3, 2021, in multiple brokerage accounts in his name, Kakkera bought 82,150 shares of NeoPhotonics stock.  In addition, between October 15 and November 1, 2021, Kakkera's brokerage accounts accumulated a total of 3,014 NeoPhotonics call options contracts.

78.     Between October 19, 2021 and November 3, 2021, Kakkera also caused, directly or indirectly, the Kakkera Trust to buy 47,200 shares of NeoPhotonics stock.

79.     In total, Kakkera and the Kakkera Trust paid approximately $1.66 million to purchase both NeoPhotonics shares and call options.

80.     Following the NeoPhotonics Announcement, Kakkera and the Kakkera Trust gained a total of approximately $2.45 million in illicit profits.

81.     Between October 7 and December 15, 2021, Kakkera transferred funds to Salwan on at least four occasions, for a total of at least $300,000.

**C.      Bhardwaj Tipped Saeedi About the NeoPhotonics Announcement, and Saeedi Traded on the Tip**

82.     Saeedi was a longtime friend of Bhardwaj, as well Bhardwaj's accountant. During 2021, Bhardwaj and Saeedi regularly communicated by telephone calls, text messages,

and WhatsApp messages.

83. Bhardwaj and Saeedi communicated by telephone on October 15 and October 18, 2021.

84. On or before October 20, 2021, Bhardwaj tipped Saeedi with material nonpublic information about Lumentum's plan to acquire NeoPhotonics.

85. From October 20, 2021 to November 1, 2021, Saeedi caused, directly or indirectly, a brokerage account in the name of this wife, Janya Saeedi, to purchase 6,000 shares of NeoPhotonics stock and 635 NeoPhotonics call option contracts.

86. In his own brokerage account, Saeedi bought 299 NeoPhotonics call option contracts between October 21 and 26, 2021.

87. Between November 1 and 3, 2021, Saeedi further caused, directly or indirectly, All US Tacos's brokerage account to purchase a total of 280 NeoPhotonics call option contracts.

88. Following the NeoPhotonics Announcement, Saeedi gained illicit profits of approximately $176,566. Janya Saeedi and All US Tacos also illegally profited by approximately $387,062 and $127,475, respectively.

89. Less than three weeks later, on November 24, 2021, Saeedi wrote a check for $100,000 to Salwan from his business's bank account.

    **D.**    **Bhardwaj Tipped Chitor About the NeoPhotonics Announcement, and Chitor Traded on the Tip and Shared Illicit Profits With Bhardwaj**

90. Chitor was a friend of Bhardwaj. They often communicated by telephone and text message and on occasion met in person, and they discussed their respective professions, the economy, and securities trading.

91. On or about October 21, 2021, Bhardwaj and Chitor attended a business networking dinner together. While they were together, Bhardwaj tipped Chitor with material

15

nonpublic information about Lumentum's plan to acquire NeoPhotonics. Bhardwaj and Chitor agreed that Chitor would share with Bhardwaj some of his profits from trading on this information.

92. Throughout the remainder of October, Bhardwaj and Chitor communicated via telephone calls and text message.

93. From October 22 through November 3, 2021, Chitor accumulated 10,250 shares of NeoPhotonics stock and 4,783 NeoPhotonics call option contracts based on the material nonpublic information provided to him by Bhardwaj.

94. On the date of the NeoPhotonics Announcement, Chitor sold all of his NeoPhotonics securities, gaining illicit profits of more than $1.24 million.

95. Following the NeoPhotonics Announcement, in late 2021, Bhardwaj asked Chitor to send money to a relative of Bhardwaj who lived in India ("Relative 1"). Chitor agreed and directed two individuals he knew who had accounts in India to send to Relative 1 Indian rupees in the amount equivalent to tens of thousands of U.S. dollars. Chitor had the rupees transferred to Relative 1 to compensate Bhardwaj for the material nonpublic information Bhardwaj had provided to Chitor about the NeoPhotonics Announcement.

**E.     Bhardwaj, Kakkera, Saeedi, and Chitor Acted with Scienter**

96. Bhardwaj tipped Kakkera, Saeedi, and Chitor with material nonpublic information about Lumentum's acquisition of NeoPhotonics in violation of Lumentum's polices and in breach Bhardwaj's duty of trust and confidence to Lumentum.

97. Bhardwaj knew or recklessly disregarded that the information he tipped was material and nonpublic.

98. Bhardwaj tipped Kakkera, Saeedi, and Chitor for personal benefits, including personal financial gain and the benefit of making gifts of material nonpublic information to friends.

99. Bhardwaj intended for Kakkera, Saeedi, and Chitor to trade on Bhardwaj's tips, and he knew or recklessly disregarded that Kakkera, Saeedi, and Chitor would trade in NeoPhotonics securities on his tips.

100. Kakkera, Saeedi, and Chitor each purchased NeoPhotonics securities as alleged above (including by causing purchases in the accounts of the Kakkera Trust, Janya Saeedi, and All US Tacos as alleged above) while in possession and on the basis of the material nonpublic information that they had received from Bhardwaj. Kakkera, Saeedi, and Chitor knew or recklessly disregarded that the information was material and nonpublic.

101. Kakkera, Saeedi, and Chitor each knew, recklessly disregarded, or consciously avoided knowing that the tips they received from Bhardwaj were conveyed in breach of Bhardwaj's fiduciary duty or a similar obligation arising from a relationship of trust and confidence.

## FIRST CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(All Defendants)**

102. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 101.

103. Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one

or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

104.  By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Claims with Respect to Relief Defendants
### (All Relief Defendants)

105.  The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 101.

106.  By virtue of the conduct alleged herein, Salwan, the Kakkera Trust, All US Tacos, and Janya Saeedi received ill-gotten gains based on the Defendants' illegal conduct.

107.  Salwan, the Kakkera Trust, All US Tacos, and Janya Saeedi have no legitimate claim to these ill-gotten gains.

108.  Salwan, the Kakkera Trust, All US Tacos, and Janya Saeedi obtained the ill-gotten gains under circumstances in which it is not just, equitable, or conscionable for them to retain the funds.

109.  By reason of the foregoing, Salwan, the Kakkera Trust, All US Tacos, and Janya Saeedi have therefore been unjustly enriched, and must disgorge ill-gotten gains that they received.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

**I.**

Permanently restraining and enjoining each Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

**III.**

Ordering Defendants to pay civil monetary penalties under Exchange Act Section 21A [15 U.S.C. § 78u-1];

**IV.**

Prohibiting each Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

**V.**

Ordering each Relief Defendant to disgorge, with prejudgment interest, all ill-gotten gains by which the Relief Defendant was unjustly enriched, under Exchange Act Sections

21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)].

**VI.**

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
July 25, 2022

*/s/ Ann Marie Preissler*
Ann Marie Preissler
Joseph G. Sansone
Simona K. Suh
Joshua Geller
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-5056 (Preissler)
Email: preisslera@sec.gov

*Attorneys for Plaintiff*