**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                              **Plaintiff,**<br><br>          **-against-**<br><br>**AMIT BHARDWAJ, DHIRENKUMAR PATEL, SRINIVASA KAKKERA, ABBAS SAEEDI, and RAMESH CHITOR,**<br><br>                              **Defendants,**<br><br>          **-and-**<br><br>**GAURI SALWAN, THE KAKKERA FAMILY TRUST, ALL US TACOS INC., and JANYA SAEEDI,**<br><br>                    **Relief Defendants.** | **1:22-cv-06277 (ALC)** |

[~~PROPOSED~~] **FINAL JUDGMENT AS TO DEFENDANT SRINIVASA KAKKERA**

The Securities and Exchange Commission having filed a Complaint and Defendant Srinivasa Kakkera ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

> (a)    to employ any device, scheme, or artifice to defraud;

> (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

> (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], Defendant is prohibited, for seven years and six months following the date of entry of this Final Judgment, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $2,453,687.99, representing ill-gotten gains as a result of the conduct alleged in the Complaint, together with prejudgment interest in the amount of $247,402.19, but that disgorgement and prejudgment interest are deemed satisfied by the order of forfeiture entered against the Defendant in the criminal case captioned *United States v. Srinivasa Kakkera*, Crim. No. 22 CR 398 (GHW) (S.D.N.Y.) (Dkt. Nos. 126/129).

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

VII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated:  June 13, 2024

_____
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

**SECURITIES AND EXCHANGE**
**COMMISSION,**

                      **Plaintiff,**

     **-against-**

**AMIT BHARDWAJ, DHIRENKUMAR**
**PATEL, SRINIVASA KAKKERA,**
**ABBAS SAEEDI, and RAMESH CHITOR,**

                  **Defendants,**

     **-and-**

**GAURI SALWAN, THE KAKKERA**
**FAMILY TRUST, ALL US TACOS INC., and**
**JANYA SAEEDI,**

                 **Relief Defendants.**

**1:22-cv-06277 (ALC)**

## CONSENT OF DEFENDANT SRINIVASA KAKKERA

1.      Defendant Srinivasa Kakkera ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Srinivasa Kakkera*, Crim. No. 22 CR 398 (GHW) (S.D.N.Y.), Defendant pleaded guilty to conspiracy to commit securities fraud and wire fraud [18 U.S.C. § 371].  In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent.

3.      Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things, (a) permanently restrains and enjoins Defendant from violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], (b) orders that Defendant is liable for disgorgement in the amount of $2,453,687.99 and prejudgment interest in the amount of $247,402.19, which will be deemed satisfied by the order of forfeiture entered against him in *United States v. Srinivasa Kakkera*, Crim. No. 22 CR 398 (GHW) (S.D.N.Y.) (Dkt. Nos. 126/129); and (c) prohibits Defendant, for seven years and six months following the date of entry of this Final Judgment, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

4.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.      Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.      Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this

action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.    Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph

affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action.  For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

14.    Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

15.     Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Final Judgment.


Dated:  04/02/2024                        *Srinivasa Kakkera*
        _____               _____
                                          Srinivasa Kakkera

        On  April 2  , 2024,  Srinivasa Kakkera  , a person known to me,
personally appeared before me and acknowledged executing the foregoing Consent.
This notarial act was an online notarization.

                                          *Robin McCormack*
                                          _____
                                          Notary Public
                                          Commission expires: June 5, 2027



Approved as to form:


_____
Elisha Kobre, Esq.
Bradley Arant Boult Cummings LLP
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
ekobra@bradley.com
Attorney for Defendant

ROBIN MCCORMACK
Notary Public, State of Texas
ID# 124581522
My Commission Expires
June 05, 2027

7

# Exhibit A

N95DKAKP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                          22 Cr. 398 (GHW)

5  SRINIVASA KAKKERA,

6                                        Plea
              Defendant.
7  ------------------------------x

8                                        New York, N.Y.
9                                        September 5, 2023
                                         10:00 a.m.
10

11  Before:

12                     HON. GREGORY H. WOODS,

13                                        U.S. District Judge

14                          APPEARANCES

15  DAMIAN WILLIAMS
        United States Attorney for the
16      Southern District of New York
    ADAM SLOAN HOBSON
17      Assistant United States Attorney

18  ELISHA JONATHAN KOBRE
        Attorney for Defendant
19

20  Also Present:

21  Kristin Allain, FBI
    Jordan Avery, FBI

22

23

24

25

N95DKAKP

1          (Case called; appearances noted)

2          THE COURT:  Thank you very much.  Good morning.

3          So, first, Mr. Kakkera, I've been informed that you

4    wish to plead guilty to Count 7 of the indictment that's

5    numbered 22 CR 398.

6          Is that correct?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Thank you.

9          You can remain seated until I ask you to stand.

10         Mr. Kakkera, before I accept your guilty plea, I'm

11   going to ask you a number of questions, so that I can establish

12   to my satisfaction that you wish to plead guilty because you

13   are, in fact, guilty, and not for some other reason.  Also, to

14   ensure that you know what rights you'll be giving up if you

15   choose to proceed and enter a guilty plea in this matter.

16         Mr. Kakkera, if you do not understand any of my

17   questions or if you'd like to consult with your lawyer at any

18   point during today's proceeding, please do not hesitate to let

19   me know.  I'd be happy to give you as much time as you like to

20   confer with your counsel, and I'd be happy to clarify any of my

21   questions if it would be helpful for you.

22         THE DEFENDANT:  Thank you.

23         THE COURT:  First, Mr. Kakkera, because I'm going to

24   be asking you a number of questions, I'd like to ask you to

25   stand to take an oath to answer my questions truthfully.

N95DKAKP

```
 1            Please raise right hand.

 2            (Defendant sworn)

 3            THE COURT:  Thank you very much.  You can be seated.

 4            Mr. Kakkera, you are now under oath, which means that

 5    if you answer any of my questions falsely, you may be

 6    prosecuted for the separate crime of perjury or making false

 7    statements.  The government would have the right to use any

 8    statement that you make under oath against you in such a

 9    prosecution.

10            Do you understand that?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  Thank you.

13            So, first, Mr. Kakkera, what's your full name?

14            THE DEFENDANT:  Srinivasa Kakkera.

15            THE COURT:  Thank you.

16            Mr. Kakkera, could I ask you to move the microphone

17    closer to you if you would?

18            THE DEFENDANT:  Is that better?

19            THE COURT:  Thank you.

20            You can be seated.  Thank you.

21            How hold are you?

22            THE DEFENDANT:  I'm 48 now.

23            THE COURT:  Where were you born?

24            THE DEFENDANT:  In India.

25            THE COURT:  Are you a United States citizens?
```

N95DKAKP

```
1                    THE DEFENDANT:  Yes, sir.

2                    THE COURT:  How far did you go in school?

3                    THE DEFENDANT:  I finished my Master's.

4                    THE COURT:  Can you describe for me, please, briefly

5      your employment experience?

6                    THE DEFENDANT:  In the U.S. or overall?

7                    THE COURT:  Overall.

8                    THE DEFENDANT:  I got a job right after my college in

9      India.  I worked for a startup.  That company went IPO, but I

10     left before it went IPO, and I came to the United States in

11     2003.

12          I work for Wells Fargo Bank as an architect

13     consultant -- as an information systems application design.

14     And then I joined a startup in San Francisco, in the Bay area,

15     and that was in employ number 13.  I lead the engineering

16     system architecture group.  That company got acquired by ACT.

17          I was there at ACT for two years as a VP of

18     engineering leading software development teams.  I left and

19     co-founded a company in the Bay area, a company called Alert

20     Enterprise, in 2008.  For about eight, nine years I worked for

21     the company, and I left.  I joined a company as -- another

22     company, a company called  Axila, which is a government

23     software solutions for city, county, and state, provides all

24     the licensing, permitting software.  I joined as a chief

25     technology officer to help them build a scalable application to
```

N95DKAKP

1   serve all the citizens in the United States and abroad.  And

2   that company got acquired by a private equity firm.

3           I left, and I joined Adobe to lead AIML, an engineer

4   and software development team at Adobe for four plus years.

5   Recently, I was laid off from Adobe during this process.

6           THE COURT:  Thank you.

7           Mr. Kakkera, have you ever been treated or

8   hospitalized for any mental illness?

9           THE DEFENDANT:  No, sir.

10          THE COURT:  Are you currently or have you recently

11  been under the care of a physician, psychiatrist, or

12  psychologist?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Are you currently or have you recently

15  been hospitalized or treated for drug addiction?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Within the past 24 hours, Mr. Kakkera,

18  have you used or taken any alcohol, drugs, or medication?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Is your mind clear today?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Do you understand what's happening in this

23  proceeding?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Have you received a copy of the indictment

N95DKAKP

1    that's pending against you, Mr. Kakkera?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Have you had enough of a chance to discuss

4    with your lawyer the case in general, and, in particular, the

5    charge to which you intend to plead guilty, and any possible

6    defenses to that charge?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Has your lawyer explained to you the

9    consequences of entering a plea of guilty?

10             THE DEFENDANT:  Yes, sir, your Honor.

11             THE COURT:  Mr. Kakkera, are you fully satisfied with

12   your lawyer's representation of you?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Thank you.

15             Counsel for defendant, have you discussed this matter

16   with your client?

17             MR. KOBRE:  Yes, sir.  Yes, your Honor.

18             THE COURT:  Is he capable of understanding the nature

19   of these proceedings?

20             MR. KOBRE:  Yes.

21             THE COURT:  Thank you.

22             Counsel, do either of you have any doubt as to the

23   defendant's competence to plead at this time?

24             MR. HOBSON:  No, your Honor.

25             MR. KOBRE:  No, your Honor.

N95DKAKP

1          THE COURT:  Thank you.

2          On the basis of Mr. Kakkera's responses to my

3     questions, my observations of his demeanor here in court, and

4     the representations of counsel, I find that Mr. Kakkera's

5     competent to enter a plea of guilty at this time.

6          Now, Mr. Kakkera, before we turn to your plea, I'm

7     going to explain certain constitutional rights that you have.

8     I'm doing this because these are rights that you'll be giving

9     up if you choose to proceed and enter a guilty plea in this

10    matter.

11         So, again, please listen carefully to what I'm about

12    to say.  If there's anything that you don't fully understand,

13    please don't hesitate to stop me.  Your lawyer or I will be

14    happy to explain the matter more fully.

15         So, first, Mr. Kakkera, you have the right to plead

16    not guilty to the charges against you contained in the

17    indictment.

18         Do you understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  If you did plead not guilty, you'd be

21    entitled to a speedy and public trial by a jury on the charges

22    against you contained in this indictment.

23         Do you understand that?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  At a trial, you'd be presumed to be

N95DKAKP

innocent, and the government would be required to prove you

guilty by competent evidence beyond a reasonable doubt before

you could be found guilty.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  A jury of 12 people would have to agree

unanimously that you were guilty, and you would not have to

prove that you were innocent if you were to go to trial.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  At trial, and at every stage of your case,

you'd be entitled to be represented by a lawyer.  If you could

not afford a lawyer, one would be appointed for you at public

expense.  That is, free of cost.

Do you understand that?

THE DEFENDANT:  Yes.  Yes, your Honor.

THE COURT:  During a trial, the witnesses for the

government would have to come to court and testify in your

presence, and your lawyer could cross-examine the government's

witnesses, and object to evidence offered by the government.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  At trial, Mr. Kakkera, you also have the

opportunity to offer evidence on your own behalf, if you wished

to do so, and you'd have the right to compel witnesses to come

N95DKAKP

1    to court to testify in your defense.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  At a trial, you would have the right to

5    testify if you chose to do so, but you would also have the

6    right not to testify.  If you decided not to testify, no one,

7    including the jury, could draw any inference or suggestion of

8    guilt from the fact that you did not testify.

9              Do you understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Do you understand, Mr. Kakkera, that by

12   pleading guilty, you're giving up your right to seek

13   suppression of any evidence against you that the government may

14   have obtained improperly?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Mr. Kakkera, if you were convicted at a

17   trial, you'd have the right to appeal that verdict.

18             Do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Even now, as you're entering this plea,

21   Mr. Kakkera, you have the right to change your mind, and to

22   plead not guilty, and to go to trial on the charges against you

23   contained in this indictment.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

N95DKAKP

1          THE COURT:  Thank you.

2          Now, Mr. Kakkera, if you plead guilty, you will also

3     have to give up your right not to incriminate yourself.  I say

4     that because I expect that later in today's proceeding, I will

5     ask you questions about what you did in order to satisfy myself

6     that you're guilty as charged, and you will have to admit and

7     acknowledge your guilt.

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Mr. Kakkera, if you plead guilty, and if I

11    accept your plea, you will give up your right to a trial and

12    the other rights that I've just discussed with you, other than

13    your right to a lawyer, which you have regardless of whether or

14    not you plead guilty.  But there will be no trial, and I will

15    enter a judgment of guilty and a sentence on the basis of your

16    plea.  There will be no appeal with respect to whether the

17    government could use the evidence that it has against you, or

18    with respect to whether you did or did not commit this crime.

19         Do you understand that?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Thank you.

22         Now, Mr. Kakkera, I've just reviewed a number of

23    important rights that you have.

24         Do you understand each and every one of those rights?

25         THE DEFENDANT:  Yes, your Honor.

N95DKAKP

1          THE COURT:  Are you willing to give up your right to a

2     trial and the other rights that I've just discussed with you?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Thank you.

5          So, Mr. Kakkera, I understand that you've received a

6     copy of the indictment that contains the charges against you.

7          Mr. Kakkera, can I ask, have you read the indictment?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Mr. Kakkera, do you understand that count

10    7 of the indictment charges that from at least in or about the

11    fall of 2021, up to and including at least April 2022, in the

12    Southern District of New York and elsewhere, you, together with

13    others, known and unknown, conspired to commit securities fraud

14    and wire fraud in violation of Title 18, United States Code,

15    Section 371?

16         Do you understand that that's the nature of the charge

17    against you?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Thank you.

20         Counsel for the United States, can I ask you to please

21    state the elements of that offense?

22         MR. HOBSON:  Yes, your Honor.

23         Count 7 has three elements:

24         First, that the charged conspiracy existed;

25         Second, that the defendant intentionally joined and

N95DKAKP

1    participated in the conspiracy during the applicable time

2    period;

3              And, third, that at least one of the co-conspirators

4    committed an overt act in furtherance of the conspiracy.

5              Here, the conspiracy has two objects as charged,

6    security fraud and wire fraud.  To prove securities fraud under

7    Title 15, that count has five elements:

8              First, that an individual, here I mean Bhardwaj, owed

9    a duty of trust and confidence to his company;

10             Second, that Bhardwaj violated that duty of trust and

11   confidence by providing material, non-public information to the

12   defendant;

13             Third, that Bhardwaj anticipated that the defendant

14   would use that material, non-public information to trade

15   securities;

16             Fourth, that Bhardwaj anticipated receiving a personal

17   benefit of some time kind in return;

18             And, fifth, that the defendant knew that Bhardwaj

19   disclosed the information in breach of a duty of trust and

20   confidence, and in anticipation of a personal benefit.

21             The second object of the conspiracy is wire fraud.

22   That offense has the following three elements:

23             First, that there was a scheme or artifice to defraud

24   or to obtain money or property by materially false and

25   fraudulent pretenses, representations or promises;

N95DKAKP

1          Second, that the defendant knowingly participated in

2     the scheme or artifice to defraud with knowledge of its

3     fraudulent nature, and with specific intent to defraud, or that

4     he knowingly and intentionally aided and abetted others with

5     the scheme;

6          And, third, that in execution of that scheme, the

7     defendant used or caused the use of interstate or international

8     wires.

9          THE COURT:  Thank you.

10          So, Mr. Kakkera, do you understand that if you were to

11     go to trial for this offense, that the government would have to

12     prove all of the substantive elements of the offense beyond a

13     reasonable doubt?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Thank you.

16          Do you understand that the government would be

17     required to prove that venue was appropriate in the Southern

18     District of New York here, which includes, among other places,

19     Manhattan and the Bronx, by a preponderance of the evidence?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Thank you.

22          Now, Mr. Kakkera, I'm going to tell you the maximum

23     possible penalty for this crime.  The maximum means the most

24     that could possibly be imposed.  It does not mean that it's

25     what you will necessarily receive.  But still, Mr. Kakkera, you

N95DKAKP

 1   have to understand that, by pleading guilty, you're exposing

 2   yourself to the possibility of receiving any combination of

 3   punishments up to the maximum that I'm about to describe.

 4            Do you understand that?

 5            THE DEFENDANT:  Yes, your Honor.

 6            THE COURT:  Thank you.

 7            So, first, I'm going to tell you about the possible

 8   restrictions on your liberty.  The maximum term of imprisonment

 9   for this crime is five years, which could be followed by up to

10   three years of supervised release.

11            If you are sentenced to a term of supervised release,

12   Mr. Kakkera, you'll be subject to supervision by the probation

13   office.  There will be rules of supervised release that you

14   will have to follow, and if you violate those rules, you can be

15   returned to prison without a jury trial to serve additional

16   time with no credit for any time that you served in prison as a

17   result of your sentence, and with no credit for any time spent

18   on post-release supervision.

19            You should also understand, Mr. Kakkera, that there is

20   no parole in the federal system, and if you are sentenced to

21   prison, you will not be released early on parole.

22            Do you understand that?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Thank you.

25            Second, in addition to these restrictions on your

N95DKAKP

1    liberty, the maximum possible punishment also includes certain

2    financial penalties.  The maximum allowable fine is $250,000,

3    or twice the gross monetary gain derived from the offense, or

4    twice the gross monetary loss to persons other than yourself,

5    whichever of those is great greater.  In addition, I can order

6    restitution to any person or entity injured as a result of your

7    criminal conduct.  I can also order you to forfeit all property

8    derived from the offense or used to facilitate the offense.

9    And, finally, I must also order a mandatory special assessment

10   of $100.

11            Counsel, before I proceed, do either of you wish to

12   correct or amend any of the penalties that I've just described?

13            MR. HOBSON:  No, your Honor.

14            MR. KOBRE:  No, your Honor.

15            THE COURT:  Thank you.

16            Mr. Kakkera, do you understand that these are the

17   maximum possible penalties?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Thank you.

20            Mr. Kakkera, do you understand that as a result of

21   your guilty plea, you may lose certain valuable civil rights to

22   the extent that you have them, or could otherwise obtain them

23   now, such as the right to vote, the right to hold public

24   office, the right to serve on a jury, and the right to

25   possesses any kind of a firearm?

N95DKAKP

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  Mr. Kakkera, are you serving any other

3    sentence, either state or federal, or are you, to your

4    knowledge, presently being prosecuted in state court for any

5    crime?

6            THE DEFENDANT:  No, your Honor.

7            THE COURT:  Thank you.

8            Mr. Kakkera, do you understand that if your lawyer or

9    anyone else has attempted to predict what your sentence will

10   be, that their prediction could be wrong?

11           MR. KOBRE:  Could I just have a moment, Judge?

12           THE COURT:  That's fine.  Please take your time.

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Thank you.

15           Do you understand that the sentence ultimately imposed

16   may be different from any estimate that your attorney may have

17   given you?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  That's good.  It's good, because no one,

20   not your lawyer, not the government's lawyer, really no one can

21   give you any assurance of what your sentence is going to be.

22   That's because I'm going to decide your sentence, and I'm not

23   going to do that now.

24           Do you understand that?

25           THE DEFENDANT:  Yes, your Honor.

N95DKAKP

1        THE COURT:  Thank you.

2        Now, Mr. Kakkera, before I impose your sentence, I

3   will review a presentence report that will be prepared by the

4   probation department.  Now, you and your counsel and counsel

5   for the United States will have an opportunity to challenge the

6   facts that are reported in the presentence report, and also the

7   application of the advisory sentencing guidelines that are

8   recommended by the probation officer.

9        I'm obliged to do my own independent calculation of

10  the advisory sentencing guidelines range.  After your initial

11  advisory guidelines range has been determined, in some

12  circumstances, I have the authority to depart upward and

13  downward from that range.  Ultimately, I will determine what a

14  reasonable sentence is for you based on the sentencing factors

15  contained in the statute at 18 United States Code section

16  3553(a).  That may result in the imposition of a sentence

17  that's either greater or lesser than the advisory sentencing

18  guidelines range.

19        Do you understand all of this?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Have you and your attorney discussed how

22  the advisory sentencing guidelines might apply in your case?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  Thank you.

25        Now, Mr. Kakkera, even if your sentence is different

N95DKAKP

1    from what your lawyer or anyone else has told you it might be,

2    even if it's different from what you expect, or from what's

3    contained in a written plea agreement that you've entered into

4    with the United States, you will still be bound by your guilty

5    plea, and you will not be allowed to withdraw your plea of

6    guilty.

7            Do you understand that?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Thank you.

10           So, Mr. Kakkera, I've just reviewed a number of

11   possible consequences of your plea with you.  Do you understand

12   all of the possible consequences of your plea that we've just

13   discussed?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Thank you.

16           So, Mr. Kakkera, I understand that there is a written

17   plea agreement entered into between you, and your lawyer, and

18   counsel for the United States.  I have the original letter plea

19   agreement dated August 24, 2023, to your lawyer, Mr. Kobre from

20   Assistant United States Attorney Hobson.  I'm going to mark

21   this as Court Exhibit 1, and then I will provide it to the

22   United States to retain in its possession.

23           Before I hand it forward to the government, however,

24   Mr. Kakkera, I'd like to ask you some questions about this

25   agreement if I may.

N95DKAKP

1                    THE DEFENDANT:  Yes, sir.

2                    THE COURT:  Thank you.

3                    So, first, Mr. Kakkera, did you sign the original of

4        the plea agreement on the last page?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  Thank you.

7                    Did you do that today --

8                    THE DEFENDANT:  Yes, sir.

9                    THE COURT:  -- in the presentation of your lawyer?

10                   THE DEFENDANT:  Yes, sir.

11                   THE COURT:  Did you read the agreement before you

12       signed it?

13                   THE DEFENDANT:  Yes, your Honor.

14                   THE COURT:  Did you discuss the agreement with your

15       lawyer before you signed it?

16                   THE DEFENDANT:  Yes, your Honor.

17                   THE COURT:  Did you fully understand the agreement

18       before you signed it?

19                   THE DEFENDANT:  Yes, your Honor.

20                   THE COURT:  Thank you.

21                   Now, Mr. Kakkera, one of the features of your

22       agreement with the government is that you've agreed on the

23       guidelines range, the advisory sentencing guidelines range that

24       applies in this case.  You should know, Mr. Kakkera, that that

25       agreement is binding on you, and it's binding on the

N95DKAKP

1    government, but it's not binding on me.  As I said earlier, I

2    have my own independent obligation to determine what the

3    correct guidelines range is, and then what the appropriate

4    sentence is in your case.

5            I'm not saying that I will come up with any range

6    that's different from the one that's contained in your

7    agreement with the government.  At this point, I just don't

8    know.  But it is important for you to understand that if I do

9    come up with a range that's different from the one you've

10   agreed to with the government, I will not let you withdraw your

11   plea, even if the range that I determine is higher than the one

12   that you have agreed to with the government.

13           Do you understand that?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Thank you.

16           Do you understand, Mr. Kakkera, that under some

17   circumstances, you or the government may have the right to

18   appeal any sentence that I impose?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Thank you.

21           In your plea agreement, you've waived a number of

22   rights to appeal or otherwise challenge your conviction and

23   sentence in this case.  You've agreed not to file a direct

24   appeal, or to bring a collateral challenge, including but not

25   limited to an application under Title 28, United States Code

N95DKAKP

Section 2255 and/or 2241 of any sentence within or below the
stipulated guidelines range of 46 to 57 months of imprisonment.

You've also agreed not to appeal or bring a collateral
challenge to any term of supervised release that is less than
or equal to the statutory maximum.

You've also agreed not to appeal or to bring a
collateral challenge of any fine that is less than or equal to
$200,000, and any forfeiture amount that is less than or equal
to $2,164,032.50.

Furthermore, you've agreed not to attack your
conviction and sentence on direct appeal or collaterally on the
basis of the failure by the government to produce any discovery
material other than information establishing your factual
innocence, including Jencks Act material, material pursuant to
*Brady v. Maryland*, and impeachment material pursuant to *Giglio
v. United States* that has not already been produced as of the
date of the agreement.

Furthermore, although I understand that you are a
United States citizen, you've agreed not to challenge your
conviction or sentence on direct appeal or collaterally through
litigation under Title 28, United States Code sections 2255 or
2241 on the basis of any actual or perceived adverse
immigration consequences, including removal or denaturalization
resulting from your guilty plea and conviction.

Mr. Kakkera, do you understand the rights to appeal or

N95DKAKP

1    otherwise challenge your conviction and sentence that you have

2    waived in your plea agreement?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  Are you willing to waive those rights?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  Thank you.

7             Mr. Kakkera, does this written plea agreement

8    constitute your complete and total understanding of the entire

9    agreement between you and the government?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  Has anything been left out?

12            THE DEFENDANT:  No, your Honor.

13            THE COURT:  Thank you.

14            Mr. Kakkera, other than what's written in this

15   agreement, has anyone made any promise to you or offered you

16   any inducement to plead guilty or to sign the plea agreement?

17            THE DEFENDANT:  No, your Honor.

18            THE COURT:  Has anyone threatened you or forced you to

19   plead guilty or to sign the plea agreement?

20            THE DEFENDANT:  No, your Honor.

21            THE COURT:  Has anyone made a promise to you as to

22   what your sentence will be?

23            THE DEFENDANT:  No, your Honor.

24            THE COURT:  Thank you.

25            So, Mr. Kakkera, I told you earlier that there'd come

N95DKAKP

1    a time in today's proceeding when I would ask you to tell me

2    what it is that you did that makes you believe that you're

3    guilty of this offense.  Now is that time.

4         Would you please tell me what it is that you did that

5    makes you believe that you are guilty of this offense?

6         THE DEFENDANT:  First, I want to apologize --

7         THE COURT:  Thank you.

8         THE DEFENDANT:  -- to the government, and the agents,

9    and my family, and my friends, who trusted me all the way and

10   supported.  I have dealt with various serious responsibilities

11   in my life.  I executed them with good honesty and pride of my

12   jobs, and created many jobs for many people, and helped many

13   people in many ways.  But in this occasion, I misjudged and

14   acted on the information provided to me, and I think what I did

15   is wrong.  I admit I know that he was an employee of Lumentum.

16   He held a single -- similar responsibilities in the government,

17   and he shared with me that he's sharing the confidential

18   information with me about a trade, for the Neophotonics, the

19   company I purchased.

20        I think what is -- what is shared with me is something

21   I need to act on or buy, have some financial benefits, and I

22   realized that that's a big mistake.  And I think that that's my

23   -- that's what I think I did wrong.  And I understand that

24   that's not supposed to be acted on, the information, what he

25   shared with me.  And, as a result, I already lost my job,

1    family, and many other things, well-paying jobs, and leadership

2    positions, and many other things in social and personal life,

3    and so on.

4           I do not want to trouble anybody in this process

5    thereafter, and I realize that, you know, it's not for me to

6    take any time from the government.  And I did -- I do accept

7    that what I did is wrong.

8           That's all, your Honor.

9           THE COURT:  Thank you.

10          Just briefly, a few brief questions.  First I'm going

11   to turn to counsel for defendant.  Then I'm going to ask the

12   government to let me know what specific follow-up questions

13   you'd like for me to raise with Mr. Kakkera.  But I'll start

14   with counsel for defendant.  Counsel, do you know of any valid

15   defense that would prevail at trial, or do you know of any

16   reason why your client should not be permitted to plead guilty?

17          MR. KOBRE:  No, your Honor.

18          THE COURT:  Thank you.

19          So, counsel for the United States, what questions

20   would you propose that I ask Mr. Kakkera?

21          MR. HOBSON:  One second, your Honor, please.

22          THE COURT:  Thank you.

23          MR. HOBSON:  Your Honor, I would just ask if the Court

24   could inquire and confirm that Mr. Bhardwaj and Mr. Kakkera had

25   a personal friendship.

N95DKAKP

```
 1              THE COURT:  Thank you.  Good.

 2              So, first, Mr. Kakkera, is it correct that you and

 3   Mr. Bhardwaj had a personal friendship?

 4              THE DEFENDANT:  Yes, your Honor.

 5              THE COURT:  Thank you.

 6              Counsel for the United States, any further questions?

 7              MR. HOBSON:  Your Honor, that is sufficient.

 8              I would make a proffer as to venue, that some of the

 9   brokerage accounts involved in the trading in this conspiracy

10   were based in Manhattan, which is within the Southern District

11   of New York.

12              THE COURT:  Thank you.

13              Counsel for defendant, do you accept that proffer?

14              MR. KOBRE:  Yes, your Honor.

15              THE COURT:  Thank you.

16              Just a couple of brief additional questions.

17              Mr. Kakkera, you say that you knew that Mr. Bhardwaj

18   had a senior role at the company.  Did you know that

19   Mr. Bhardwaj had a duty to maintain the confidentiality of the

20   information that he shared with you?

21              THE DEFENDANT:  I assume.

22              THE COURT:  Thank you.

23              Did you know that, by providing the information to

24   you, Mr. Bhardwaj was violating that duty?

25              THE DEFENDANT:  Yes, your Honor.
```

N95DKAKP

| | |
|---|---|
| 1 | THE COURT:  Thank you. |
| 2 | Is it correct that you traded on the basis of the |
| 3 | information provided to you by Mr. Bhardwaj? |
| 4 | THE DEFENDANT:  Yes, your Honor. |
| 5 | THE COURT:  Thank you. |
| 6 | So, counsel for the United States, let me hear from |
| 7 | you.  Can you proffer what facts you would present at trial in |
| 8 | order to support each of the elements of the charged crime |
| 9 | here?  I'm not so much interested in the categories of |
| 10 | evidence, but how that evidence would prove each of the |
| 11 | elements of the crime. |
| 12 | MR. HOBSON:  Yes, your Honor. |
| 13 | The evidence would include, but not be limited to |
| 14 | multiple cooperating witnesses, who would testify about Amit |
| 15 | Bhardwaj providing material, non-public information in exchange |
| 16 | for benefits, including about the Neophotonics trade.  These |
| 17 | cooperators, or at least one of the cooperators would also |
| 18 | testify about meeting with Mr. Kakkera after the FBI approached |
| 19 | the members of the trading scheme, in which they collectively |
| 20 | got their stories together about what they would tell the |
| 21 | authorities showing the defendant's knowledge and intent to be |
| 22 | part of this insider trading scheme. |
| 23 | The evidence would include phone records showing the |
| 24 | defendant in touch with Bhardwaj, and also with certain |
| 25 | downstream tippees, who this defendant provided material, |

N95DKAKP

1   non-public information to.  It would include text messages with

2   some of those downstream tippees in which they alluded to the

3   material, non-public information in the -- its announcement on

4   November 4.  It would include cell site information, which

5   would show the defendant meeting with Amit Bhardwaj along key

6   moments in the timeline.  And it would include brokerage and

7   trading records showing this defendant and other members of the

8   conspiracy trading options in Neophotonics around the relevant

9   time periods.

10          THE COURT:  Thank you.  Very good.

11          So, counsel, do each of you agree that there's a

12   sufficient factual predicate for a guilty plea?

13          MR. HOBSON:  Yes, your Honor.

14          MR. KOBRE:  Yes, your Honor.

15          THE COURT:  Thank you.

16          Do either of you know of any reason that I should not

17   accept the defendant's plea of guilty?

18          MR. HOBSON:  No, your Honor.

19          MR. KOBRE:  No, Judge.

20          THE COURT:  Thank you.

21          Mr. Kakkera, can I ask you to please stand.

22          Thank you.

23          Mr. Kakkera, count 7 of the indictment charges that

24   from at least in or about the fall of 2021, up to and including

25   at least April 2022, in the Southern District of New York and

N95DKAKP

1    elsewhere, you, together with others, known and unknown,

2    conspired to commit securities fraud and wire fraud in

3    violation of Title 18, United States Code, section 371.

4                How do you plead to this count?

5                THE DEFENDANT:  I plead guilty.

6                THE COURT:  Thank you.

7                There's a forfeiture allegation with respect to this

8    count.

9                Is that right, counsel for the United States?

10               MR. HOBSON:  Yes, your Honor.

11               THE COURT:  Thank you, counsel for the United States.

12               Mr. Kakkera, do you admit the forfeiture allegations

13   with respect to count 7 of the indictment?

14               THE DEFENDANT:  Yes, sir.

15               THE COURT:  Thank you.

16               It is the finding of the Court in this case that

17   Mr. Kakkera is fully competent and capable of entering an

18   informed plea, that Mr. Kakkera is aware of the nature of the

19   charge, and the consequences of the plea, and that the plea of

20   guilty is a knowing and voluntary plea, supported by an

21   independent basis in fact containing each of the essential

22   elements of the offense.  The plea is therefore accepted, and

23   Mr. Kakkera is now adjudged guilty of that offense.

24               Thank you.  Mr. Kakkera, you can be seated.

25               THE DEFENDANT:  Yes.

N95DKAKP

1          THE COURT:  Mr. Kakkera, the probation department will

2     want to interview you in connection with the presentence report

3     that it's going to prepare.

4          Counsel, do you wish to be present in connection with

5     any interview in connection with that report?

6          MR. KOBRE:  Yes, your Honor.  Thank you.

7          THE COURT:  Thank you.

8          I order that there be no interview unless counsel is

9     present.

10          Counsel for the United States, please provide the

11     probation office with the government's factual statement within

12     seven days.

13          Counsel for defendant, please arrange for Mr. Kakkera

14     to be interviewed by the probation department within the next

15     14 days.

16          Mr. Kakkera, just briefly, if you choose to speak to

17     the probation department, I would ask that you make sure that

18     anything you may choose to say be truthful and accurate.  This

19     report is very important for me in deciding what the

20     appropriate sentence is in your case.  I'm going to read the

21     report very carefully.  I'm lingering on this point now,

22     because you and your counsel have the right to examine the

23     report and to comment on it, so the probation officer who's

24     preparing the report, prior to its finalization, and also to me

25     at or before sentencing -- so I just wanted to talk a moment to

N95DKAKP

1   encourage you to take advantage of that right and to read the

2   report, so that you can let your counsel know if there are any

3   errors in it so he can bring it to the attention of the

4   probation department and/or to me prior to sentencing.

5           So, with that, I'm going to set a sentencing date now.

6   Let me turn to my staff.

7           What date shall the sentencing take place on?

8           THE DEPUTY CLERK:  December 21st at 10:00 a.m.

9           THE COURT:  Thank you.

10          So the sentencing will take place on December 21st, at

11  10:00 a.m.

12          Counsel, does that date and time work for each of you?

13          First, counsel for the United States?

14          MR. HOBSON:  Yes, your Honor.

15          THE COURT:  Thank you.

16          Counsel for defendant?

17          MR. KOBRE:  Yes, your Honor.

18          THE COURT:  Very good.  Let me refer you, counsel, to

19  my individual rules of practice in criminal cases, which are

20  available in the Court's website.  There are a number of rules

21  regarding sentencing there.  The principal guidance that I want

22  to highlight here are the deadlines.

23          In accordance with my rules, the defendant's

24  sentencing submissions are due two weeks prior to sentencing.

25  The government's sentencing submissions are due one week prior

N95DKAKP

1    to sentencing.

2              Good.  So, counsel, let's talk about the defendant's

3    release status.

4              Counsel for the government, what's your view?

5              MR. HOBSON:  Your Honor, we believe the current bail

6    conditions can remain in place.  We're not seeking remand.

7              THE COURT:  Thank you.

8              Counsel for defendant, can I hear a proffer from you

9    on risk of flight and danger to the community?

10             MR. KOBRE:  Yes, your Honor.

11             Mr. Kakkera has been fully compliant since his arrest

12   in this matter.  He's been on supervised release in his

13   district of residence, which is in California.  He's reported

14   to the officer without any incident whatsoever.  There have

15   been a few occasions on which we have requested Mr. Kakkera's

16   ability to take short trips, whether to the northeast, and

17   within the northeast generally, and he's always complied with

18   and reported properly to his proba -- to his pretrial services

19   officer, rather, and followed all directions.  As well as,

20   there is a pretty substantial bail package that was approved

21   upon his presentment in this court.  And so we believe that, by

22   clear and convincing evidence, the Court should find that he

23   does not pose any risk of flight.

24             THE COURT:  Thank you.

25             On the basis of the proffer by counsel, and

N95DKAKP

1    Mr. Kakkera's experience while on pretrial release, I'm going

2    to find that the defendant is not likely to flee or pose a

3    danger to the safety of any other person or the community, and

4    will allow him to remain at liberty through sentencing, subject

5    to the existing bail conditions.

6            Mr. Kakkera, do you understand that all of the

7    conditions upon which you have been released up until now will

8    continue to apply, and that any violation of any of those

9    conditions can have very serious consequences for you at the

10   time of sentencing?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  Thank you.

13           Mr. Kakkera, you must be in this courtroom for

14   sentencing at the date and time that I've just set.  If you are

15   not, you will be guilty of a separate crime, which is bail

16   jumping, and you'll be subject to a fine and/or prison term in

17   addition to whatever sentence you may receive for the crime to

18   which you've just pleaded guilty, unless I change that date and

19   time by written order.

20           Do you understand all of that, Mr. Kakkera?

21           THE DEFENDANT:  Can I just take a second?

22           THE COURT:  You may.

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Good.  Thank you.

25           Counsel, is there anything else that we should take up

N95DKAKP

```
1    before we adjourn?

2              MR. HOBSON:  No, your Honor.

3              THE COURT:  First, counsel for the United States.

4              MR. HOBSON:  No, your Honor.

5              MR. KOBRE:  If I might just have one moment with

6    Mr. Kakkera?

7              THE COURT:  That's fine.  Please take your time,

8    counsel.

9              MR. KOBRE:  Your Honor, if I might ask the Court's

10   indulgence.

11             THE COURT:  Yes.

12             MR. KOBRE:  Both myself and Mr. Kakkera are traveling

13   some distance for -- to come to court, and we were wondering

14   whether it might be possible to set it, because of the holiday

15   season, to set sentencing just right after the new -- as soon

16   as possible, at the Court's convenience, but within the new --

17   the beginning of the new year.

18             THE COURT:  Thank you.  That's fine.

19             Yes, I'm happy to propose an alternative date.

20             MR. KOBRE:  Thank you, Judge.

21             THE DEFENDANT:  Thank you, your Honor.

22             THE COURT:  Thank you.

23             So I propose that we conduct the sentencing on January

24   3rd, also at 10:00 a.m.

25             First, counsel to the United States?
```

N95DKAKP

1           MR. HOBSON:  Yes, your Honor.

2           THE COURT:  Thank you.

3           Counsel?

4           MR. KOBRE:  Yes, your Honor.

5           THE COURT:  Very well.  Thank you all very much.  This

6    preceding is adjourned.

7           (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25