**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                              **Plaintiff,**<br><br>      **-against-**<br><br>**AMIT BHARDWAJ, DHIRENKUMAR PATEL, SRINIVASA KAKKERA, ABBAS SAEEDI, and RAMESH CHITOR,**<br><br>                              **Defendants.** | **1:22-cv-06277 (ALC)** |

### [~~PROPOSED~~] FINAL JUDGMENT AS TO DEFENDANT DHIRENKUMAR PATEL

The Securities and Exchange Commission having filed a Complaint and Defendant

Dhirenkumar Patel ("Defendant") having entered a general appearance; consented to the Court's

jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final

Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from

this Final Judgment:

**I.**

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is

permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of

interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)    to employ any device, scheme, or artifice to defraud;

(b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], Defendant is prohibited, for seven years and six months following the date of entry of this Final Judgment, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $423,074, representing his ill-gotten gains as a result of the conduct

alleged in the Complaint, together with prejudgment interest in the amount of $19,318, for a total of $442,392. The obligation to pay this amount of disgorgement and prejudgment interest is deemed satisfied by entry of the order of forfeiture against Defendant in the related criminal case, *United States v. Patel*, 22 Cr. 369 (VSB) (S.D.N.Y.) (Dkt. No. 35).

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

VII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: ___September 24___, 2024

_____
UNITED STATES DISTRICT JUDGE
 Andrew L. Carter, Jr.

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>　　　　　　　　　**Plaintiff,**<br><br>　-against-<br><br>**AMIT BHARDWAJ, DHIRENKUMAR PATEL, SRINIVASA KAKKERA, ABBAS SAEEDI, and RAMESH CHITOR,**<br><br>　　　　　　　　　**Defendants.** | **1:22-cv-06277 (ALC)** |

## CONSENT OF DEFENDANT DHIRENKUMAR PATEL

1.　　Defendant Dhirenkumar Patel ("Defendant") acknowledges having waived service of a summons and complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.　　Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action. Specifically, in *United States v. Dhirenkumar Patel*, Crim. No. 22 CR 369 (VSB) (S.D.N.Y.), Defendant pleaded guilty to violations of conspiracy to commit securities fraud [18 U.S.C. § 371], conspiracy to commit securities fraud and wire fraud [18 U.S.C. § 1349], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78ff] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and conspiracy to obstruct justice [18 U.S.C. § 371]. In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent.

1

3.      Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things, (a) permanently restrains and enjoins Defendant from violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], (b) orders that Defendant is liable for disgorgement in the amount of $423,074 and prejudgment interest in the amount of $19,318, but deems the obligation to pay those amounts satisfied by entry of the order of forfeiture against him in *United States v. Dhirenkumar Patel*, Crim. No. 22 CR 369 (VSB) (S.D.N.Y.) (Dkt. No. 35); and (c) prohibits Defendant, for seven years and six months following the date of entry of this Final Judgment, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

4.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.      Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

2

8.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this

3

action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.    Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e),  Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and:  (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.  Nothing in this paragraph

affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.    In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

14.    Defendant agrees that the Commission may present the Final Judgment to the

Court for signature and entry without further notice.

15.    Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Final Judgment.

Dated: 19- Aug-2024

_____

Dhirenkumar Patel

On  08/19/ , 2024, DHIRENKUMAR PATEL, a person known to me,
personally appeared before me and acknowledged executing the foregoing Consent.

R. C. SINGH
Notary Public - California
Santa Clara County
Commission # 2464152
My Comm. Expires Oct 21, 2027

_____

Notary Public
Commission expires: OCT 21, 2027

Approved as to form:

_____

Vlad Shafran
Krieger Lewin LLP
350 Fifth Avenue
77th Floor
New York, NY 10118
Vlad.Shafran@KriegerLewin.com
Attorney for Defendant



A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California, County of Santa Clara }ss. On 08/19/2024 be... re me R.C. Singh, Notary Public, personally appeared DHIRENKUMAR PATEL who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

6

# EXHIBIT A

M77QpatP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA
 3
                v.                          22 CR 369 (VSB)
 4
     DHIRENKUMAR PATEL
 5
                    Defendant
 6   ------------------------------x
 7                                          New York, N.Y.
                                            July 7, 2022
 8                                          10:10 a.m.
 9
     Before:
10
                        HON. VERNON S. BRODERICK
11                                          District Judge
12
                            APPEARANCES
13
     DAMIAN WILLIAMS
14        United States Attorney for the
          Southern District of New York
15   NOAH SOLOWIEJCZYK
     RICHARD A. COOPER
16        Assistant United States Attorney
17   KRIEGER KIM & LEWIN LLP
          Attorneys for Defendant
18   VARUN GUMASTE
     EDWARD KIM
19
20   ALSO PRESENT:  JORDAN AVERY, FBI
                    VIOSANNY HARRISON, USPTO (SDNY)
21                  MADELINE KAPLAN, Analyst (Krieger Kim Lewin)
22
23
24
25
```

1          (In open court)

2          THE COURT:  If I could ask counsel to please identify

3   themselves for the record.

4          MR. SOLOWIEJCZYK:  Good morning, your Honor.  Noah

5   Solowiejczyk and Richard Cooper on behalf of the government.

6   We're joined at counsel's table by Special Agent Jordan Avery

7   of the FBI and by the pretrial officer whose name I don't know.

8   Apologies.

9          THE COURT:  That's okay.  Officer Harrison; is that

10  correct?

11         MS. HARRISON:  Yes.  Good morning.

12         THE COURT:  Good morning.

13         For the defense.

14         MR. GUMASTE:  Good morning, your Honor.  Varun Gumaste

15  and Edward Kim on behalf of Mr. Patel.  We're joined at counsel

16  table by one of our analysts, Madeline Kaplan.

17         THE COURT:  Good morning.

18         MR. GUMASTE:  Good morning.

19         THE COURT:  You know, let me just clarify something.

20  With regard to -- this is Mr. Patel's first appearance?

21         MR. SOLOWIEJCZYK:  Yes, it is, your Honor.

22         THE COURT:  All right.  Now, Mr. Patel, my name is

23  Judge Broderick, as you've heard.  The purpose of this

24  proceeding is to inform you of your rights.  In fact,

25  throughout the pendency of the Rule 5 hearing and the waiver of

1    indictment, arraignment and then guilty plea, there is no need

2    to stand.  I just ask that you speak into the microphone so

3    that we can make sure we have an accurate record.

4            As I mentioned, the purpose of this proceeding is to

5    inform you of certain rights that you have, inform you of the

6    charges against you, consider whether counsel should be

7    appointed and decide the conditions under which you should be

8    released.

9            Now, you have the right to remain silent, and you're

10   not required to make any statements.  So even if you've made

11   statements already to the authorities, there is no need to make

12   any further statements.  Anything you say can be used against

13   you.  You have the right to be released, either conditionally

14   or unconditionally, pending trial unless I find there are no

15   conditions that would reasonably assure your presence in court.

16           Now, as I understand it, you are represented by

17   counsel.  Is that correct?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  And counsel is sitting next to you, so is

20   that Mr. Gumaste and Mr. Kim?

21           MR. GUMASTE:  Yes, your Honor.

22           THE COURT:  Now, you should understand that if you

23   could not afford an attorney, one could be obtained for you

24   free of charge to you.  Do you understand that?

25           THE DEFENDANT:  Yes, your Honor.

 1              THE COURT:  Let me ask, Mr. Kim, Mr. Gumaste, are you

 2    retained or CJA?

 3              MR. GUMASTE:  We're retained, your Honor.

 4              THE COURT:  All right.  Thank you.

 5         So let me ask, have you seen a copy of the sealed

 6    information containing the charges against you, Mr. Patel?

 7              THE DEFENDANT:  Yes, sir, your Honor.

 8              THE COURT:  And I take it, Mr. Kim and Mr. Gumaste,

 9    you've both seen a copy of this sealed information?

10              MR. GUMASTE:  Yes, we have, your Honor.

11              THE COURT:  Have you reviewed it with your client?

12              MR. GUMASTE:  Yes, we have.

13              THE COURT:  Do you waive its public reading or,

14    Mr. Patel, would you like me to read it to you?

15              THE DEFENDANT:  Your Honor, I waive a public reading.

16              THE COURT:  Thank you.  Let me ask, Mr. Patel, are you

17    a citizen of the United States?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  All right.  I think it makes sense that I

20    handle the bail issue after I do the rest of the proceedings.

21    Does that make sense to the government?

22              MR. SOLOWIEJCZYK:  Yes, your Honor.

23              THE COURT:  To the defense?

24              MR. GUMASTE:  Yes, your Honor.

25              THE COURT:  Thank you.

M77QpatP

1          Mr. Patel, you've received a copy of the information.

2     Is that correct?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Am I correct that you waive its public

5     reading?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Have you had an opportunity to go over

8     with your attorneys the charges contained in that information?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Now, those charges include conspiracy to

11     commit securities fraud in Count One, conspiracy to commit

12     securities fraud and wire fraud in Count Two, securities fraud

13     in Count Three, and conspiracy to obstruct justice in Count

14     Four.  Is that correct?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Let me ask initially, how do you plead?

17          THE DEFENDANT:  Not guilty, your Honor.

18          THE COURT:  All right.  Thank you.

19          As I understand it, you have a copy of the

20     information.  Earlier today, did you sign a waiver of

21     indictment form?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you have a copy of it in front of you?

24     If not, Ms. Rodriguez, if you could show a copy of the waiver

25     of indictment form to Mr. Patel.

1          Let me ask, Mr. Patel, if you could look at that

2    document, does your signature appear at the bottom of that

3    document?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Did you sign that earlier today in the

6    presence of your attorneys?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And did they explain it to you?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Ms. Rodriguez, you can take the form back.

11          Mr. Patel, you should understand that you are under no

12    obligation to waive indictment.  Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And do you understand that if you were not

15    to waive indictment and the government wanted to prosecute you,

16    it would have to present your case to the grand jury, which may

17    or may not indict you.  Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you understand that by waiving

20    indictment, you're giving up your right to have this case

21    presented to a grand jury?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  And do you understand what a grand jury

24    is?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Now, let me ask, does either counsel know

2     of any reason I should not find that Mr. Patel has knowingly

3     and voluntarily waived his right to be indicted by a grand

4     jury?

5          MR. SOLOWIEJCZYK:  No, your Honor.

6          THE COURT:  All right.

7          MR. GUMASTE:  No, your Honor.

8          THE COURT:  Okay.  Thank you.  We'll take care of

9     getting the waiver of indictment form signed -- excuse me --

10    witnessed by my deputy clerk and filed.

11         Now, I find, Mr. Patel, that you're knowingly and

12    voluntarily waiving your right to be indicted by a grand jury,

13    so I'm going to authorize the filing of the sealed information.

14         Now, before I accept your plea, Mr. Patel, I'm going

15    to ask you certain questions so that I can establish to my

16    satisfaction that you wish to plead guilty because you are in

17    fact guilty and not for some other reason and to establish that

18    you know the rights you'll be giving up by pleading guilty.

19         If you don't understand any of my questions or if you

20    want some additional time to speak with your attorneys, just

21    let me know, and I'll either try and answer your question or

22    I'll give you as much time as you need to speak with your

23    attorneys in private.  Okay?

24         THE DEFENDANT:  Okay, your Honor.

25         THE COURT:  All right.  Ms. Rodriguez, if I could ask

M77QpatP

1    you to please swear Mr. Patel in.

2              (Defendant sworn)

3              THE COURT:  Mr. Patel, you're now under oath, which

4    means if you answer any of my questions falsely, you may be

5    prosecuted for the separate crime of perjury.  Do you

6    understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Now, what is your full name?

9              THE DEFENDANT:  My full name is Dhirenkumar

10   Jaikrishnabhai Patel.

11             THE COURT:  Could I ask you to spell your name for the

12   court reporter?

13             THE DEFENDANT:  Yes.  Dhirenkumar, D as in David

14   H-I-R-E-N as in Nancy K-U-M-A-R.  Jaikrishnabhai,

15   J-A-I-K-R-I-S-H-N-A-B-H-A-I.  Patel, P-A-T-E-L.

16             THE COURT:  Great.  Thank you.  How old are you?

17             THE DEFENDANT:  50 years old, your Honor.

18             THE COURT:  How far did you go in school?

19             THE DEFENDANT:  I have master's degree.

20             THE COURT:  All right.  Have you ever been

21   hospitalized or treated for any mental illness?

22             THE DEFENDANT:  No, your Honor.

23             THE COURT:  Are you now or have you recently been

24   under the care of a doctor or psychiatrist?

25             THE DEFENDANT:  No, your Honor.

```
 1              THE COURT:  Have you ever been treated or hospitalized
 2   for any type of addiction, including drug or alcohol addiction?
 3              THE DEFENDANT:  No, your Honor.
 4              THE COURT:  Have you taken any drugs, medicine or
 5   pills or drunk any alcoholic beverages in the past 24 hours?
 6              THE DEFENDANT:  No, your Honor.
 7              THE COURT:  Is your mind clear today?
 8              THE DEFENDANT:  Yes, your Honor.
 9              THE COURT:  Do you understand what is happening today?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  Now, let me ask, Mr. Gumaste, have you
12   discussed this matter with your client?
13              MR. GUMASTE:  Yes, your Honor.
14              THE COURT:  And does he understand the rights -- from
15   your perspective, does he understand the rights he'll be
16   waiving by pleading guilty?
17              MR. GUMASTE:  I believe he does.
18              THE COURT:  And, similarly, from your perspective, is
19   he capable of understanding the nature of these proceedings?
20              MR. GUMASTE:  Yes, your Honor.
21              THE COURT:  Let me ask, does either counsel have any
22   doubt as to Mr. Patel's competence to plead guilty at this
23   time?  The government.
24              MR. SOLOWIEJCZYK:  No, your Honor.
25              THE COURT:  The defense.
```

M77QpatP

1              MR. GUMASTE:  No, your Honor.

2              THE COURT:  Now, on the basis of your responses to me,

3      Mr. Patel, here in court, my observations of you; in other

4      words, your demeanor, and the representations of counsel, I

5      find that you're fully competent to enter an informed plea of

6      guilty at this time.

7              Now, I know this is somewhat repetitive, but,

8      Mr. Patel, you've received a copy of the sealed information.

9      Is that correct?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  And did you read it?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  And I take it you waive its public reading

14     in connection with your guilty plea?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Now, have you had enough of a chance to

17     discuss with your attorneys the charges to which you intend to

18     plead guilty and any possible defenses to those charges?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Now, have your attorneys explained to you

21     the consequences of entering a guilty plea?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  And are you satisfied with your attorneys'

24     representations?

25             THE DEFENDANT:  Yes, your Honor.

1        THE COURT:  Now, I'm going to explain to you certain

2   constitutional rights that you have.  These are rights that you

3   are going to be giving up by pleading guilty.  So, as I

4   mentioned earlier, listen carefully to what I'm about to say

5   and the questions I'm about to ask; and, again, if you don't

6   understand something, just stop me, and I'll try and explain it

7   to you more fully or I'll give you the time to speak with your

8   attorneys that you need.  Okay?

9        THE DEFENDANT:  Okay, your Honor.

10        THE COURT:  All right.  Now, under the Constitution

11   and laws of the United States, you have the right to plead not

12   guilty to the charges in the information.  Do you understand

13   that?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  And if you were to plead not guilty, you'd

16   be entitled to a speedy and public trial by a jury on the

17   charges contained in the information.  Do you understand that?

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  Now, at a trial, you'd be presumed

20   innocent, and the government would be required to prove you

21   guilty by competent evidence beyond a reasonable doubt before

22   you could be found guilty.  Do you understand that?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  A jury of 12 people would have to agree

25   unanimously that you were guilty, and you would not have to

M77QpatP

1   prove that you were innocent if you were to go to trial.  Do

2   you understand that?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  At a trial and at every stage of your

5   case, you're entitled to have an attorney.  And if you were

6   unable to afford an attorney, one would be appointed to

7   represent you at public expense; in other words, free of cost

8   to you to represent you.  Do you understand that?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Now, during a trial, the witnesses for the

11  government would have to come to court and testify in your

12  presence.  Mr. Gumaste and Mr. Kim could cross-examine the

13  witnesses for the government, object to evidence offered by the

14  government, and offer evidence in your own behalf if you so

15  desired.  You'd also have the right to have subpoenas or other

16  process issued to compel witnesses to come testify in your

17  defense.  Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Now, at a trial, although you'd have the

20  right to testify if you chose to, you would also have the right

21  not to testify.  And if you decided not to testify, no one,

22  including the jury, could draw any inference of guilt from the

23  fact you did not testify.  Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Have you had a full opportunity to discuss

1  with your attorneys whether there's a basis to seek suppression

2  of some or all of the evidence against you on the grounds that

3  your constitutional rights were violated?  In other words, to

4  keep all the evidence out against you, do you understand by

5  pleading guilty you're giving up that right?  Do you understand

6  that?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  So have you had an opportunity to talk

9  with your attorneys about those rights?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  Now, if you were convicted at trial, you'd

12  have a right to appeal that verdict.  Do you understand that?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  So even now as you're entering your guilty

15  plea, you have a right to change your mind and to go to trial

16  on the charges in the sealed information.  Do you understand

17  that?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Now, if you plead guilty and I accept your

20  plea, you're going to be giving up your right to trial and the

21  other rights I've just discussed, other than the right to a

22  lawyer which you have regardless -- excuse me -- regardless to

23  whether or not you plead guilty.  But there will be no trial,

24  and I will enter a judgment of guilty and sentence on the basis

25  of your plea after I've considered a presentence report and

1    whatever submissions I get from your attorneys and from the

2    government.  There will be no appeal with respect to whether

3    the government could use the evidence that it has against you

4    or with respect to whether you did or did not commit these

5    crimes.  Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Now, if you plead guilty, you'll also have

8    to give up your right not to incriminate yourself because in a

9    moment I'm going to ask you questions about what it is that you

10   did that makes you believe that you're guilty of the charges

11   contained in the information.  Do you understand that?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Do you understand each of the rights that

14   I've just discussed with you?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  And are you willing to give up your right

17   to trial and the other rights that I've just discussed?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Now, do you understand that you're charged

20   with conspiracy to commit securities fraud, conspiracy to

21   commit securities fraud and wire fraud, securities fraud, and

22   finally conspiracy to obstruct justice.  Do you understand that

23   you're charged with that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  If I could ask the government to please

1  state the elements of each of the offenses in question.

2           MR. SOLOWIEJCZYK:  Yes, your Honor.

3           With respect to Count One, which is conspiracy to

4  commit Title 15 securities fraud, the government would have to

5  prove the following elements beyond a reasonable doubt:

6           First, that the charged conspiracy existed.

7           Second, that the defendant intentionally joined and

8  participated in the conspiracy during the applicable time

9  period.

10           And, third, that at least one of the co-conspirators

11  committed an overt act in furtherance of the conspiracy.

12           The object of the conspiracy charged in Count One is

13  securities fraud in violation of Title 15, United States Code

14  Section 78j(b) and 78ff, Title 17 Code of Federal Regulations

15  Sections 240.10b-5, and that offense has the following

16  elements:

17           First, that in connection with the purchase or sale of

18  securities, in this instance securities of Coherent, the

19  defendant employed a device, scheme, or artifice to defraud or

20  engage in an act, practice, or course of business that

21  operated, or would operate, as fraud or deceit upon a purchaser

22  or seller of the specified security.

23           Second, that when he engaged in this scheme, the

24  defendant acted knowingly, willfully, and with an intent to

25  defraud.

1          And, third, that in furtherance of the scheme, there

2     occurred at least one use of any means or instrument of

3     transportation or communication in interstate commerce or the

4     use of the mails or the use of any facility of any national

5     securities exchange.

6          That's Count One, your Honor.

7          With respect to Count Two, Count Two charges a

8     conspiracy in violation of Title 18 united States Code, Section

9     1349 with two objects:  One object being securities fraud;

10    second object being wire fraud.

11         With respect to Count Two, the government would have

12    to prove the following elements beyond a reasonable doubt:

13         First that the charged conspiracy existed.

14         And, second, that the defendant intentionally joined

15    and participated in the conspiracy during the applicable time

16    period.

17         As I mentioned, the conspiracy has two objects.  With

18    respect to the first object, Title 18 United States Code,

19    Section 1348 securities fraud, that offense has the following

20    elements:

21         First, that the defendant executed a scheme to defraud

22    a person or to obtain money or property by materially false and

23    fraudulent pretenses, representations or promises.

24         And, second, that the defendant participated in the

25    scheme knowingly, willfully, and with an intent to defraud.

1          And, third, that the scheme to defraud was connected

2   to the purchase or sale of stock in a company whose securities

3   were registered under Section 12 of the Securities Exchange Act

4   of 1934 or is otherwise required to file reports under that

5   act.

6          The second object of the conspiracy is wire fraud in

7   violation of Title 18 United States Code, Section 1343.  That

8   offense has the following elements:

9          First, that there was a scheme or artifice to defraud

10  or to obtain money or property by materially false and

11  fraudulent pretenses, representations or promises.

12         Second, that the defendant knowingly and willfully

13  participated in the scheme or artifice to defraud with

14  knowledge of its fraudulent nature and with specific intent to

15  defraud.

16         And, third, that in the execution of that scheme, the

17  defendant used or caused the use of interstate or international

18  wires.

19         The third count in the information charges securities

20  fraud in violation of Title 15 United States Code, Section

21  78j(b) and 78ff, 17 CFR 240.10b-5; and to satisfy its burden,

22  the government would have to prove beyond a reasonable doubt

23  the elements I previously described as to securities fraud, the

24  object of the conspiracy charged in Count One.  So I'm not

25  going to go over those again, your Honor.

M77QpatP

1          THE COURT:  Okay.

2          MR. SOLOWIEJCZYK:  And then, finally, with respect to

3     Count Four, the government would have to prove conspiracy in

4     violation of Title 18 United States Code, Section 371, and we'd

5     have to prove the following elements beyond a reasonable doubt:

6          First, that the charged conspiracy existed.

7          Second, that the defendant intentionally joined and

8     participated in the conspiracy during the applicable time

9     period.

10          And, third, that at least one of the co-conspirators

11     committed an overt act in furtherance of said conspiracy.

12          The object of that conspiracy, your Honor, is

13     obstruction of justice in violation of Title 18 United States

14     Code, Section 1503, and that offense has the following

15     elements:

16          First, that on or about the dates set forth in the

17     indictment -- I'm sorry -- in the information, your Honor,

18     there was a proceeding pending before a federal grand jury.

19          Second, that the defendant knew of the proceeding.

20          And, third, that the defendant corruptly acted to

21     obstruct or impede or endeavor to obstruct or impede those

22     proceedings.

23          And then, finally, your Honor, the government would

24     have to prove venue in the Southern District of New York by a

25     preponderance of the evidence as to all four counts.

1          THE COURT:  Okay.  Now, Mr. Patel, did you hear what

2    the prosecutor just said?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand that if you were to go

5    to trial, the government would have to prove each of the

6    elements of the offenses that the prosecutor just mentioned

7    beyond a reasonable doubt with the exception of venue.  Do you

8    understand that?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  All right.  Now, Mr. Patel, I'm going to

11   tell you what the possible maximum penalties are that could be

12   imposed for these crimes.  Now, that doesn't mean that that is

13   what you will necessarily receive, but you have to understand

14   that by pleading guilty, you're subjecting yourself to the

15   possibility of punishments up to the maximum I'm about to

16   describe.  Okay?

17         THE DEFENDANT:  Okay, your Honor.

18         THE COURT:  First, with regard to restrictions on your

19   liberty, the maximum term of imprisonment for the crime charged

20   in Count One of the information is five years' imprisonment,

21   and you face a maximum of three years of supervised release.

22         With regard to Count Two of the information, you face

23   a maximum term of imprisonment of 20 years' imprisonment, and

24   you face a maximum term of supervised release on that charge of

25   three years.

1    With regard to Count Three of the information, you

2    face a maximum term of imprisonment on that count also of 20

3    years' imprisonment and a maximum term of supervised release of

4    three years.

5    With regard to Count Four of the information, you face

6    a maximum term of imprisonment of five years and a maximum term

7    of supervised release of three years.

8    Now, you've heard me mention supervised release a few

9    times.  What that means is you'll be subject to the supervision

10   of the probation department.  There are going to be rules of

11   supervised release that you'll have to follow, and if you

12   violate those rules, you could be returned to prison, without a

13   jury trial, to serve additional time with no credit for the

14   time you served in prison as a result of your offense and no

15   credit for the time you spent on post release supervision.  Do

16   you understand that?

17   THE DEFENDANT:  Yes, your Honor.

18   THE COURT:  You should also understand that there's no

19   parole in the federal system, and that if you're sentenced to a

20   term of imprisonment, you won't be released early on parole.

21   Now, there is an opportunity for you to earn credit

22   for good behavior, but you'll have to serve at least 85 percent

23   of the time to which you're sentenced.  Do you understand that?

24   THE DEFENDANT:  Yes, your Honor.

25   THE COURT:  Now, sir, do you understand that the

M77QpatP

maximum term of incarceration for the four counts to which you

intend to plead guilty in the information is 50 years?  Do you

understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, second, in addition to restrictions

on your liberty, there's certain maximum financial penalties

that you face.

Now, with regard to Counts One, Two and Four, you face

the possible maximum financial penalty of $250,000, or twice

the gross gain derived from the offense or twice the gross loss

to persons other than yourself.

Now, with regard to Count Three, the maximum fine is

$5 million, or twice the gross gain derived from the offense,

or twice the gross loss to persons other than yourself.

Now, do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I'm also required to order restitution,

which I understand as part of your plea agreement, you've

agreed to restitution.  Is that correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, I can also order that you forfeit

property derived from the offense or used to facilitate the

offense.  And I notice, again, as part of your plea agreement,

you agree to admit to the forfeiture allegation as it relates

to Counts One through Four of the information.  Is that

M77QpatP

1    correct?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Now, finally, you must also pay a

4    mandatory special assessment of $100 on each count, for a total

5    of $400, and that special assessment would be due at

6    sentencing.  Do you understand that?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  So do you understand that these are the

9    maximum penalties that you face?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  And, Mr. Patel, I know I asked you this

12    earlier, but I need to ask you again, you are a United States

13    citizen.  Is that correct?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  Now, do you understand that you will not

16    have a right to withdraw your guilty plea based upon any actual

17    perceived immigration consequence.  Do you understand that?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Do you understand that as a result of your

20    guilty plea, you may lose certain valuable civil rights that

21    you have, to the extent you have them or could otherwise obtain

22    them, such as the right to vote, the right to hold public

23    office, the right to serve on a jury and the right to possess

24    any kind of firearm.  Do you understand that?

25            THE DEFENDANT:  Yes, your Honor.

1              THE COURT:  Now, let me ask, Mr. Patel, are you

2    currently serving any other sentence, whether state or federal,

3    or are you being prosecuted by the state for any crime?

4              THE DEFENDANT:  No, your Honor.

5              THE COURT:  But my understanding is that there is a

6    parallel, is it an investigation by the Securities and Exchange

7    Commission.  Is that correct?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Mr. Patel, are you currently on parole?

10             THE DEFENDANT:  No, your Honor.

11             THE COURT:  All right.  Now, do you understand that if

12   anybody has attempted to predict for you, whether it's your

13   attorneys or the government's attorney, what your sentence will

14   be, that their prediction could be wrong.  Do you understand

15   that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Now, no one -- not your lawyer, not the

18   government's lawyers, no one -- can give you any assurance

19   concerning what your sentence will be because I'm going to

20   wait, as I mentioned, until I receive a report from the

21   probation department, your presentence report.

22             Once I receive that, I'm going to do my own

23   independent calculation of the guidelines range that applies in

24   your case, consider that range and any possible departures from

25   it, consider any submissions I get from your attorneys and from

1  the government's attorneys, and also ultimately to determine

2  what a reasonable sentence is for you based only the sentencing

3  factors contained in United States Code, Section 3553(a).  Do

4  you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Have you discussed these issues with your

7  attorneys?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  So what that means is even if your

10  sentence is different from what you think it should be or your

11  attorneys have told you or the government's attorneys have

12  said, you're still going to be bound by your guilty plea, and I

13  won't allow you to withdraw your guilty plea.  Do you

14  understand that?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Now, I do have a copy of a plea agreement

17  which is dated July 6 of this year, 2022, to your attorneys.

18          Do you have a copy of that in front of you?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  And is that an originally signed copy?  In

21  other words, if you could turn to the last page, does your

22  signature appear on that page?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  And did you sign that earlier today in the

25  presence of your attorneys?

 1          THE DEFENDANT:  Yes, your Honor.

 2          THE COURT:  And did you read it before you signed it?

 3          THE DEFENDANT:  Yes, your Honor.

 4          THE COURT:  And did you discuss it with your attorneys

 5   before you signed it?

 6          THE DEFENDANT:  Yes, your Honor.

 7          THE COURT:  So did you fully understand it before you

 8   signed it?

 9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Now, you should understand that that

11   agreement is binding on yourself, it's binding on your

12   attorneys, and it's binding on the government's attorneys and

13   the government, but it's not binding on me.

14          So, as I mentioned, I have my own obligation to

15   determine what the correct guideline range is in your case and

16   ultimately to determine what an appropriate sentence is for

17   you.  Do you understand that, that your plea agreement, this

18   document letter, dated July 6, 2022, that that is not binding

19   on me?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand also as part of your

22   plea agreement -- let me ask the government, I apologize,

23   because I wasn't -- hold on one second.

24          (Pause)

25          THE COURT:  Let me ask, do you understand that you've

1    agreed that in addition to the charges contained in the

2    information, that you are also agreeing that your false

3    statements to special agents of the Federal Bureau of

4    Investigation in or about March 2022, that that counts as

5    relevant conduct in connection with the crimes to which you're

6    pleading guilty?  Do you understand that?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Do you understand that your plea agreement

9    is a particular type of plea agreement; in other words, that

10   you've agreed to cooperate with the government and any agencies

11   that they direct that you cooperate with.  Do you understand

12   that?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  That includes meeting with them, providing

15   them with documents, answering all of their questions, and

16   answering any questions of the authorities that they ask you to

17   answer.  Do you understand that?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Have you discussed the cooperation and the

20   requirements of cooperation with your attorneys?

21           THE DEFENDANT:  Yes, your Honor, I have, your Honor.

22           THE COURT:  Okay.  Now, do you understand, in

23   particular, that if you comply with all of the terms of the

24   agreement, that letter dated July 6, including providing

25   substantial assistance to the government, that the government

1    will make a motion on your behalf pursuant to 5K1.1 of the

2    Sentencing Guidelines and Section 3553(e) of Title 18

3    requesting that I sentence you in light of the factors

4    contained in Section 5K1.1 of the Sentencing Guidelines.  Do

5    you understand that that's part of your agreement?

6             THE DEFENDANT:  Yes, your Honor.

7             THE COURT:  However, do you understand if the

8    government determines in its sole discretion that you've not

9    complied with the terms of your agreement, that it is then

10   relieved of the requirement to make a motion on your behalf,

11   but if they don't make that motion, you're still bound by your

12   guilty plea.  Do you understand that?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  Now, do you understand that if the

15   government does not file a motion, that I cannot then make a

16   determination that you provided substantial assistance.  Do you

17   understand that?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Do you understand that even if that motion

20   is filed, that the sentence to be imposed remains in my sole

21   discretion.  Do you understand that?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  So that means that I'm going to determine

24   your sentence and not somebody else.  Do you understand that?

25            THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Now, does the plea agreement, the letter

2   dated July 6 of 2022, constitute your complete and total

3   understanding of your agreement between yourself and the

4   government?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Has anything been left out?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Now, other than what's written in the

9   agreement, has anyone made you any promise or offered you

10  anything of value, any inducement, in order to plead guilty or

11  sign the agreement?

12         THE DEFENDANT:  No, your Honor.

13         THE COURT:  Has anyone threatened you or forced you to

14  plead guilty or sign the agreement?

15         THE DEFENDANT:  No, your Honor.

16         THE COURT:  Has anyone promised you what your sentence

17  will be?

18         THE DEFENDANT:  No, your Honor.

19         THE COURT:  Now, Mr. Patel, I'm asking you now, after

20  going through the issues relating to your guilty plea, how do

21  you plead?

22         THE DEFENDANT:  I plead guilty, your Honor.

23         THE COURT:  Now, Mr. Patel, we've reached the point in

24  the proceeding when I'm going to ask you to tell me what it is

25  that you did with regard to the four counts to which you intend

1    to plead guilty.  So go ahead.  Do you have a statement there?

2                THE DEFENDANT:  Yes, I have, your Honor.

3                THE COURT:  Is that a statement that you have reviewed

4    with your lawyers?

5                THE DEFENDANT:  Yes, I have, your Honor.

6                THE COURT:  And it's a statement that basically you

7    reviewed with your lawyers, and that you agree that this

8    describes in general terms your conduct with regard to each of

9    the counts?

10               THE DEFENDANT:  Yes, your Honor.

11               THE COURT:  Okay, go ahead.

12               THE DEFENDANT:  From November 2020 to September 2021--

13               THE COURT:  Take your time.

14               THE DEFENDANT:  Okay.  From November 2020 to

15   September 2021, I engaged in a scheme with Amit Bhardwaj --

16               THE COURT:  Could you spell that for us?

17               THE DEFENDANT:  Yes, your Honor.  Amit, A-M-I-T.

18   Bhardwaj, B-H-A-R-D-W-A-J.

19               -- to commit insider trading.  I knew at the time that

20   Mr. Bhardwaj was the chief information security officer of

21   Lumentum.

22               Mr. Bhardwaj and I agreed that I would trade in shares

23   of Coherent based on information Mr. Bhardwaj provided

24   regarding Lumentum's planned acquisition of Coherent, and share

25   profits of that trading with Mr. Bhardwaj.

M77QpatP

1          I knew that this information was not public and that

2     Mr. Bhardwaj should not have disclosed it to me.

3          I did in fact make timely, profitable trades based on

4     this information.  I subsequently conveyed a share of the

5     profits to a third party, as Mr. Bhardwaj directed.

6          I executed these via an online trading platform.

7          On March 29, 2022, I was interviewed by FBI agents who

8     also gave me a grand jury subpoena issued by the Southern

9     District of New York in connection with an investigation into

10    the insider trading scheme.

11         After receiving the subpoena in about March 2022 to

12    April 2022, I met with Mr. Bhardwaj and others and agreed to

13    falsify records to obstruct the investigation.

14         We also discussed providing false information and

15    destroying evidence.

16         What I did was wrong, and I deeply regret my actions.

17    As I stand before you today, I have tremendous remorse and am

18    truly sorry for what I have done.

19         THE COURT:  Okay.  Thank you.  Let me ask, when you

20    say you knew it was wrong, you knew it was illegal to do

21    insider trading and to agree with other people to do insider

22    trading?

23         THE DEFENDANT:  Can you repeat that, your Honor?

24         THE COURT:  Sure.  Did you know it was illegal to

25    commit insider trading?

 1          THE DEFENDANT:  Yes, your Honor.

 2          THE COURT:  And you knew it was illegal to agree with

 3   other folks to commit insider trading?

 4          THE DEFENDANT:  Yes, your Honor.

 5          THE COURT:  And that it was illegal to take

 6   information from someone who had inside information because of

 7   their job and use it to trade?  You knew that was illegal?

 8          THE DEFENDANT:  Yes, your Honor.

 9          THE COURT:  And then after the FBI gave you the grand

10   jury subpoena, were you asked certain questions?  Did they ask

11   you questions when they met with you?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And did you tell them the truth or did you

14   lie?

15          THE DEFENDANT:  During the interview, I lied to the

16   agents.

17          THE COURT:  I'm not saying about everything, but you

18   lied about certain things.  Is that correct?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Let me ask, what is the government's

21   evidence with regard to venue?

22          MR. SOLOWIEJCZYK:  Sure, your Honor.  We have a

23   proffer on venue we're happy to provide.

24          So with respect to Counts One through Three, we would

25   prove venue, among other ways, by a preponderance of the

1   evidence based on the fact that the relevant security that

2   Mr. Patel was trading in Coherent is traded on the NASDAQ, and

3   NASDAQ is headquartered in the Southern District of New York.

4           We'd also show that certain executing brokers for

5   certain of the relevant stock transactions in Coherent stock by

6   the defendant, that those brokers are based in Manhattan.

7           And we'd also show that DTCC, which I believe is

8   Depository Trust Clearing Corporation, they're based in

9   Manhattan, and they cleared many of the relevant transactions.

10          As to the obstruction conspiracy, we would prove

11  venue, among other means, by the fact that the defendant was

12  aware that he was obstructing an S.D.N.Y-based grand jury

13  investigation.

14          THE COURT:  Mr. Patel, you were aware that when you

15  were handed the subpoena, that was from the folks in the U.S.

16  Attorney's Office in the Southern District of New York, you

17  knew that?

18          THE DEFENDANT:  Yes, sir, your Honor.

19          THE COURT:  All right.  Let me ask, Mr. Gumaste and

20  Mr. Kim, do you know of any valid defense that would prevail at

21  trial or do you know of any reason I should not allow your

22  client to be permitted to plead guilty at this time?

23          MR. GUMASTE:  No, your Honor.

24          THE COURT:  Let me ask the government, are there any

25  additional questions I should ask?  Is there anything that I

1    have missed?

2            MR. SOLOWIEJCZYK:  Your Honor, you may have covered

3    this already, so I apologize.  I'm not sure I heard you ask if

4    he was satisfied with his attorneys' representations.  You may

5    have asked that and I missed it.

6            THE COURT:  Yes, it doesn't matter.  Let me ask,

7    Mr. Patel, are you satisfied with your attorneys'

8    representation?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Okay.  Anything else?

11           MR. SOLOWIEJCZYK:  No, your Honor.

12           THE COURT:  If I could ask if the government could

13   please summarize what the evidence would have been had

14   Mr. Patel proceeded to trial.

15           THE DEFENDANT:  Your Honor, the evidence would have

16   consisted, among other things -- it would consist of, among

17   other things, trading records showing the timely nature of the

18   trades, phone records showing timely phone contact between

19   Mr. Patel and the source of the insider information, and then,

20   among other things, it would also consist of records that were

21   obtained pursuant to judicially authorized search warrants of

22   both Mr. Patel's devices, as well as his electronic -- or

23   electronic accounts of others that participated in the

24   conspiracy.

25           THE COURT:  Mr. Patel, did you hear what the

M77QpatP

1  prosecutor just said?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you understand that by pleading guilty,

4  you're giving up your right to challenge all of the evidence

5  the prosecutor just mentioned?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Let me ask, do counsel agree there's a

8  sufficient factual predicate for the guilty plea.  The

9  government.

10         MR. SOLOWIEJCZYK:  Yes, your Honor.

11         THE COURT:  The defense.

12         MR. GUMASTE:  Yes, your Honor.

13         THE COURT:  Does either counsel know of any reason I

14 should not accept Mr. Patel's plea of guilty?

15         MR. SOLOWIEJCZYK:  No, your Honor.

16         MR. GUMASTE:  No, your Honor.

17         THE COURT:  Mr. Patel, because you acknowledge that

18 you are in fact guilty of the counts charged in the information

19 Counts One, Two, Three and Four, because I'm satisfied that you

20 know your rights, including your right to go to trial, and that

21 you're aware of the consequences of your plea, including the

22 sentence which may be imposed, and because I'm finding that

23 you're knowingly and voluntarily pleading guilty, I'm going to

24 accept your plea of guilty and enter a judgment of guilty on

25 Counts One, Two, Three and Four of the information.

1          Now, when it gets time closer to the time of your

2    sentencing, the probation department is going to want to

3    interview you, and I take it counsel for defense will want to

4    be there?

5          MR. GUMASTE:  Yes, your Honor.

6          THE COURT:  Now, that interview won't take place

7    unless your attorneys are there, and it won't take place

8    immediately because of the nature of your plea.  But I'm going

9    to ask you that when you do speak to probation, that everything

10   that you tell them should be truthful, and that when you do

11   receive a copy of the report, that you go over it with your

12   attorneys to make sure it's accurate because I'm going to rely

13   on that report in connection with determining what an

14   appropriate sentence is for you.  Okay?

15         THE DEFENDANT:  Okay, your Honor.

16         THE COURT:  All right.  So I think it makes sense to

17   set a control date approximately six months out.  Does that

18   work for the government?

19         MR. SOLOWIEJCZYK:  Yes, your Honor.

20         THE COURT:  Ms. Rodriguez, if we could have a control

21   date six months from today.

22         DEPUTY CLERK:  January 6, 2023.

23         THE COURT:  January 6, 2023.  That's just a control

24   date, Mr. Patel, so it's not a date unless all of your

25   cooperation is done and the government has indicated that to

1    me, and your attorneys have indicated that to me, and your

2    presentence report is done.

3              In all likelihood, that won't be in six months, so you

4    won't be sentenced on that date, but your attorneys and the

5    government will be required to communicate with me to let me

6    know the status of your case.  Okay?

7              THE DEFENDANT:  Okay, your Honor.

8              THE COURT:  Now in light of the nature of the

9    agreement, the government's obligation to provide a factual

10   statement to probation is going to be held in abeyance, as will

11   any interview of you in connection with the preparation of a

12   presentence report.

13             When it does come time for sentencing, I think it also

14   makes sense it will be inverted because typically defense

15   counsel waits until the government makes a decision on the

16   issue of a 5K letter.  So the government will supply that to me

17   approximately two weeks in advance, and the defense, their

18   submission approximately one week in advance.

19             Let me ask, is there anything other than -- well, let

20   me say, I've been handed a sealed affirmation and application

21   relating to the certain of materials that we've discussed

22   today, as well as the transcript and also a sealing order.  So

23   I'm dating the sealing order today, and I'm signing it so the

24   government can -- so that materials relevant today outlined in

25   the sealing order can remain under seal and can be disclosed

M77QpatP

1   consistent with the order as indicated.

2          With regard to the transcript, the parties here can

3   obtain a copy of the transcript, but it will otherwise remain

4   sealed until further notification by the parties that it should

5   be unsealed.

6          MR. SOLOWIEJCZYK:  And, your Honor, the application

7   also includes delayed docket entries.  I know it's in there,

8   but I'm just noting it for the record.

9          THE COURT:  Sure.  So that the materials will not be

10  docketed until such time as the case is unsealed, and there

11  will be delayed docketing here.

12          Now, any other issues with regard to the guilty plea?

13  I was going to proceed to the bail issue.

14          MR. SOLOWIEJCZYK:  Not from the government, your

15  Honor.

16          MR. GUMASTE:  Not from defense.

17          THE COURT:  All right.  Thank you.

18          So I have a copy of the pretrial services report.  Let

19  me ask, in connection with today's proceeding, has Mr. Patel

20  been processed, first, by the arresting agency and then by the

21  United States Marshals?

22          AGENT AVERY:  Yes, your Honor.

23          THE COURT:  But by the marshals also?

24          AGENT AVERY:  Yes, sir.

25          THE COURT:  Fantastic.  So I have the pretrial

| | |
|---|---|
| 1 | services report which recommends pretrial service supervision |
| 2 | as directed, surrender of travel documents, and to make no new |
| 3 | applications, and that travel be restricted to the Southern |
| 4 | District and Eastern Districts of New York and the Northern |
| 5 | District of California and points in between.  I take it that |
| 6 | would be points in between utilizing air travel, or does it |
| 7 | matter one way or the other?  In other words, because that |
| 8 | includes all -- |
| 9 | MR. SOLOWIEJCZYK:  Your Honor, yes, it would be air, |
| 10 | so sort of where you take off and where you land, and we |
| 11 | actually have some very modest proposed modifications to the |
| 12 | districts that would be permissible for him to travel. |
| 13 | THE COURT:  Why don't you go ahead. |
| 14 | MR. SOLOWIEJCZYK:  In addition to Northern District of |
| 15 | California, Eastern District of New York and Southern District |
| 16 | of New York, the parties would jointly propose that the |
| 17 | districts include -- that he can travel to would include |
| 18 | District of New Jersey, at times he flies in and out of Newark, |
| 19 | and then also the Eastern District of California because our |
| 20 | understanding is that Mr. Patel actually lives very close to |
| 21 | the border of the Northern District of California and the |
| 22 | Eastern District of California. |
| 23 | THE COURT:  So is that consistent with the defense's |
| 24 | understanding? |
| 25 | MR. GUMASTE:  It is, your Honor. |

M77QpatP

1      THE COURT:  We'll add the district of New Jersey and

2    the Eastern District of California to the points to which

3    travel is restricted, including the others that I've mentioned.

4      Now, is there agreement to the terms otherwise -- so

5    the other condition that pretrial services recommends is that

6    Mr. Patel be released on a bond cosigned by two financially

7    responsible persons and then with the conditions I just

8    mentioned.  Is that consistent with the parties' understanding?

9      MR. SOLOWIEJCZYK:  Yes, your Honor.  We have a jointly

10   proposed package for your Honor, which is largely consistent

11   with what pretrial has recommended.

12      THE COURT:  Okay.

13      MR. SOLOWIEJCZYK:  The package would consist of a

14   $175,000 personal recognizance bond.  It would be cosigned by

15   two financially responsible persons, and it would be secured by

16   $17,500.  Defendant would surrender his passport and travel

17   documents and make no new applications.

18      Pretrial services has directed, and I believe we

19   already covered the travel restrictions.  In terms of the

20   timing, the defendant would have one week to post the $17,500

21   security, and then the defendant would be given 30 days to

22   locate two financially responsible persons to cosign the bond.

23      That's the proposal from the parties, your Honor.

24      THE COURT:  Just to be clear, $175,000 personal

25   recognizance bond cosigned by two financially responsible

1   people.  The bond will be secured by $17,500.  That will be

2   due, that condition must be met within a week from today.

3          Defendant is to surrender his passport and travel

4   documents and the pretrial services as directed, as well as the

5   restrictions on travel that I mentioned:  S.D.N.Y., E.D.N.Y.,

6   Northern District of California, District of New Jersey, and

7   Eastern District of California, pretrial services supervision

8   as directed.  And then with regard to the two financially

9   responsible individuals, 30 days in order to meet that

10  requirement.

11         MR. SOLOWIEJCZYK:  That's right, your Honor, and the

12  defendant could be released today on his own signature.

13         THE COURT:  All right.  Is that consistent with the

14  defense's understanding?

15         MR. GUMASTE:  It is, your Honor.

16         THE COURT:  I believe that based upon the nature and

17  circumstances of this case, and Mr. Patel's ongoing

18  cooperation, that this is an appropriate bail package that has

19  to be met, and that Mr. Patel can be released today on his own

20  signature of the bond.

21         Let me ask, is there anything else that we need to

22  take care of today?

23         MR. SOLOWIEJCZYK:  Not from the government, your

24  Honor.

25         THE COURT:  All right.  From the defense?

 1              MR. GUMASTE:  No, your Honor.

 2              THE COURT:  All right.  Thank you very much.  We'll

 3     stand adjourned.

 4              Does the government need the originally signed, this

 5     copy of the cooperation agreement?

 6              MR. SOLOWIEJCZYK:  We have our own copy if your Honor

 7     wants to keep it, or we can take it back, whatever your Honor

 8     prefers.

 9              THE COURT:  I'd probably like a copy to put in our

10     electronic file for this case.  So what we'll do is we will

11     make a copy and then shred the original, all right?

12              MR. SOLOWIEJCZYK:  Thank you, your Honor.

13              THE COURT:  And we'll take care of filing the other

14     paperwork in the case.

15              MR. SOLOWIEJCZYK:  Your Honor, would it be possible to

16     have your Honor sign a second copy of the sealing order that we

17     could keep for our records?  I have an extra copy right here I

18     can pass it up.

19              THE COURT:  That would be fine.  I probably misspoke

20     when I said we'll take care of filing things.  Nothing is going

21     to get filed.

22              MR. SOLOWIEJCZYK:  Understood, your Honor.

23              THE COURT:  So let me just ask off the record for a

24     moment?

25              (Discussion off the record)

M77QpatP

1          THE COURT:  Although we're not going to file anything,

2     we will be able to get a docket number, so it will be 22 CR

3     whatever the number is.

4          MR. SOLOWIEJCZYK:  Understood.

5          THE COURT:  Anything else?

6          MR. SOLOWIEJCZYK:  No.  Thank you, your Honor.

7          THE COURT:  Anything else from the defense?

8          MR. GUMASTE:  No, your Honor.  Thank you.

9          THE COURT:  Thank you.  We'll stand adjourned.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25